## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

CANOBINOTI, LLC and
DAVID OCOMO,

Case No. _____

     Plaintiffs,

v.

RICHARD WOODS, REAL ESTATE ACQUISITION
DEVELOPMENT SALES, LLC d/b/a READS-
HEALTHCARE, LLC, THE LIONS GROUP, LLC
JAKE YANG, JO ANN MAKOUS, C&A LOGISTIX,
LLC, NATALIE MAKOUS and LEAH COX,

     Defendants.

_____/

## COMPLAINT

Plaintiffs, Canobinoti, LLC and David Ocomo, sue Defendants, Richard Woods, Reads-Healthcare, LLC, The Lions Group, LLC, Jake Yang, Jo Ann Makous, C&A Logistix, LLC, Natalie Makous and Leah Cox, and allege the following:

### I.    PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff Canobinoti, LLC ("Canobinoti") is a Delaware limited liability company. It has one member, which is David Ocomo.  David Ocomo is a citizen of the State of Florida.

2.    Plaintiff David Ocomo is *sui juris* and resides in Miami-Dade County.

3.    Defendant Richard Woods is *sui juris* and resides in Dallas Fort-Worth, Texas. There is personal jurisdiction over Richard Woods because, among other things, Richard Woods operates, conducts, engages in or carries on a business or business venture in the State of Florida, committed multiple intentional tortious acts within Florida as set forth herein, caused injury to persons or property within Florida arising out of an act or omission by Richard Woods outside of



Florida while at or about the time of the injury either engaging in solicitation of service activities within this state, and breached a contract within Florida by failing to perform acts required by the contract to be performed in Florida.  Fla. Stat. §§ 48.193(1)(a)(1), (2), (6), (7).  Richard Woods is also subject to personal jurisdiction because he has engaged in substantial and not isolated activity within this state.  Fla. Stat. § 48.193(1)(b)(2).  Moreover, Richard Woods is subject to personal jurisdiction because he purposefully directed his activities to residents of the State of Florida, including Plaintiffs, and this litigation results from injuries which directly arise out of or relate to those activities.

4.      Defendant Real Estate Acquisition Development Sales, LLC d/b/a READS-Healthcare, LLC ("READS") is a Delaware limited liability company.  Upon information and belief, each of the members of READS are citizens of the State of Texas.  There is personal jurisdiction over READS because, among other things, READS operates, conducts, engages in or carries on a business or business venture in the State of Florida, committed multiple intentional tortious acts within Florida, as set forth herein, caused injury to persons or property within Florida arising out of an act or omission by READS outside of Florida, while at or about the time of the injury either engaging in solicitation of service activities within this state, and breached a contract within Florida by failing to perform acts required by the contract to be performed in Florida.  Fla. Stat. §§ 48.193(1)(a)(1), (2), (6), (7).  READS is also subject to personal jurisdiction because it has engaged in substantial and not isolated activity within this state.  Fla. Stat. § 48.193(1)(b)(2).  Moreover, READS is subject to personal jurisdiction because READS purposefully directed its activities to residents of the State of Florida, including Plaintiffs, and this litigation results from injuries which directly arise out of or relate to those activities.

BFW
BRODSKY FOTIU-WOJTOWICZ

5.      Defendant The Lions Group, LLC ("Lions Group") is a Maryland limited liability corporation with its principal place of business at 9115C Bursa Road, Suite C, Laurel MD 20723. Upon information and belief, each of the members of Lions Group are citizens of Washington, D.C.  There is personal jurisdiction over Lions Group because, among other things, Lions Group operates, conducts, engages in or carries on a business or business venture in the State of Florida, committed multiple intentional tortious acts within Florida, as set forth herein, caused injury to persons or property within Florida arising out of an act or omission by Lions Group outside of Florida, while at or about the time of the injury either engaging in solicitation of service activities within this state, and breached a contract within Florida by failing to perform acts required by the contract to be performed in Florida.  Fla. Stat. §§ 48.193(1)(a)(1), (2), (6), (7).  Lions Group is also subject to personal jurisdiction because it has engaged in substantial and not isolated activity within this state.  Fla. Stat. § 48.193(1)(b)(2).  Moreover, Lions Group is subject to personal jurisdiction because Lions Group purposefully directed its activities to residents of the State of Florida, including Plaintiffs, and this litigation results from injuries which directly arise out of or relate to those activities.

6.      Defendant Jake Yang is *sui juris* and upon information and belief resides in Washington, D.C.  There is personal jurisdiction over Jake Yang because, among other things, Jake Yang operates, conducts, engages in or carries on a business or business venture in the State of Florida, committed multiple intentional tortious acts within Florida as set forth herein, caused injury to persons or property within Florida arising out of an act or omission by Jake Yang outside of Florida while at or about the time of the injury either engaging in solicitation of service activities within this state, and breached a contract within Florida by failing to perform acts required by the contract to be performed in Florida.  Fla. Stat. §§ 48.193(1)(a)(1), (2), (6), (7).  Jake Yang is also

3

subject to personal jurisdiction because he has engaged in substantial and not isolated activity within this state. Fla. Stat. § 48.193(1)(b)(2). Moreover, Jake Yang is subject to personal jurisdiction because he purposefully directed his activities to residents of the State of Florida, including Plaintiffs, and this litigation results from injuries which directly arise out of or relate to those activities.

7. Defendant Jo Ann Makous is *sui juris* and resides in Los Angeles, California. There is personal jurisdiction over Jo Ann Makous because, among other things, Jo Ann Makous operates, conducts, engages in or carries on a business or business venture in the State of Florida, committed multiple intentional tortious acts within Florida as set forth herein, caused injury to persons or property within Florida arising out of an act or omission by Jo Ann Makous outside of Florida while at or about the time of the injury either engaging in solicitation of service activities within this state, and breached a contract within Florida by failing to perform acts required by the contract to be performed in Florida. Fla. Stat. §§ 48.193(1)(a)(1), (2), (6), (7). Jo Ann Makous is also subject to personal jurisdiction because she has engaged in substantial and not isolated activity within this state. Fla. Stat. § 48.193(1)(b)(2). Moreover, Jo Ann Makous is subject to personal jurisdiction because she purposefully directed her activities to residents of the State of Florida, including Plaintiffs, and this litigation results from injuries which directly arise out of or relate to those activities.

8. Defendant C&A Logistix, LLC ("C&A Logistix") is a California limited liability company with its principal place of business located at 1411 N Highland Avenue, #216, Los Angeles, CA, 90028. Upon information and belief, each of the members of C&A Logistix is a citizen of the State of California. There is personal jurisdiction over C&A Logistix because, among other things, C&A Logistix operates, conducts, engages in or carries on a business or

4



business venture in the State of Florida, committed multiple intentional tortious acts within Florida as set forth herein, caused injury to persons or property within Florida arising out of an act or omission by C&A Logistix outside of Florida while at or about the time of the injury either engaging in solicitation of service activities within this state, and breached a contract within Florida by failing to perform acts required by the contract to be performed in Florida.  Fla. Stat. §§ 48.193(1)(a)(1), (2), (6), (7).  C&A Logistix is also subject to personal jurisdiction because it has engaged in substantial and not isolated activity within this state.  Fla. Stat. § 48.193(1)(b)(2). Moreover, C&A Logistix is subject to personal jurisdiction because C&A Logistix purposefully directed its activities to residents of the State of Florida, including Plaintiffs, and this litigation results from injuries which directly arise out of or relate to those activities.

9.      Defendant Natalie Makous is *sui juris* and resides in Los Angeles, California. There is personal jurisdiction over Natalie Makous because, among other things, Natalie Makous operates, conducts, engages in or carries on a business or business venture in the State of Florida, committed multiple intentional tortious acts within Florida as set forth herein, caused injury to persons or property within Florida arising out of an act or omission by Natalie Makous outside of Florida while at or about the time of the injury either engaging in solicitation of service activities within this state, and breached a contract within Florida by failing to perform acts required by the contract to be performed in Florida.  Fla. Stat. §§ 48.193(1)(a)(1), (2), (6), (7).  Natalie Makous is also subject to personal jurisdiction because she has engaged in substantial and not isolated activity within this state.  Fla. Stat. § 48.193(1)(b)(2).  Moreover, Natalie Makous is subject to personal jurisdiction because she purposefully directed her activities to residents of the State of Florida, including Plaintiffs, and this litigation results from injuries which directly arise out of or relate to those activities.


BRODSKY FOTIU-WOJTOWICZ

10.     Defendant Leah Cox is *sui juris* and resides in London, England.  There is personal jurisdiction over Leah Cox because, among other things, Leah Cox operates, conducts, engages in or carries on a business or business venture in the State of Florida, committed multiple intentional tortious acts within Florida as set forth herein, caused injury to persons or property within Florida arising out of an act or omission by Leah Cox outside of Florida while at or about the time of the injury either engaging in solicitation of service activities within this state, and breached a contract within Florida by failing to perform acts required by the contract to be performed in Florida.  Fla. Stat. §§ 48.193(1)(a)(1), (2), (6), (7).  Leah Cox is also subject to personal jurisdiction because she has engaged in substantial and not isolated activity within this state.  Fla. Stat. § 48.193(1)(b)(2). Moreover, Leah Cox is subject to personal jurisdiction because she purposefully directed her activities to residents of the State of Florida, including Plaintiffs, and this litigation results from injuries which directly arise out of or relate to those activities.

11.     This Court has subject matter jurisdiction over this action because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest, costs, and fees.

12.     Venue is proper under 28 U.S.C. §§ 1391(b)(2) and 1391(b)(3) because a substantial pat of the events or omissions giving rise to this claim occurred in this district or, alternatively, because one or more defendants are subject to this Court's personal jurisdiction.

## II.     GENERAL ALLEGATIONS

13.     Beginning in August 2020, Plaintiffs leveraged their global connections to connect buyers and sellers of large quantities of personal protective equipment ("PPE") products.  This included reaching out to well-known and established personal connections as well as sourcing, contacting and verifying the legitimacy of purchasers and sellers of PPE.



14.     To protect their proprietary interest in their contacts and to avoid being circumvented after disclosing their contacts, Mr. Ocomo, both individually and by and through his wholly owned company, Canobinoti, signed or was otherwise bound by and party to several Non-Circumvention and Non-Disclosure Agreements.

15.     On August 24, 2020, Plaintiff, Richard Woods and READS signed a Mutual Confidentiality and Non-Disclosure Non-Circumention [*sic*] Agreement (the "August 24, 2020 READS NCNDA"). A true and correct copy of the August 24, 2020 READS NCNDA is attached hereto as Exhibit A.

16.     In reliance on the August 24, 2020 READS NCNDA, Plaintiffs introduced Richard Woods to a number of potential buyers of large quantities of PPE. One of these buyers was Lions Group. Richard Woods did not have any pre-existing relationship with Lions Group prior to being introduced to Lions Group by Plaintiff.

17.     Richard Woods then reached out to potential purchasers and sellers of PPE, again using Plaintiffs' contacts and connections.

18.     Plaintiffs later introduced READS and its principal, Richard Woods, to the Lions Group, Jake Yang and Jo Ann Makous.

19.     This introduction and each of Plaintiffs' actions set forth herein, which took place in August and September 2020, were subject to the terms of the August 24, 2020 READS NCNDA. Moreover, the August 24, 2020 READS NCNDA prohibited Plaintiffs, Richard Woods, and READS from disclosing confidential information, including the names or contact information of any contacts, to third parties, and further prohibited its signatories from exploring or undertaking business transactions with any person or entity whose name was provided by any party to the NCNDA without prior written consent.



20.     On September 24, 2020, Plaintiffs, Lions Group and Jake Yang, in both his individual capacity and in his capacity as Chief Executive Officer of Lions Group, signed a Mutual Confidentiality and Non-Disclosure Non-Circumvention [*sic*] Agreement (the "September 24, 2020 NCNDA").   The September 24, 2020 NCNDA designated Jo Ann Makous as the attorney representative for Lions Group and, therefore, also bound Jo Ann Makous.  The September 24, 2020 NCNDA is attached hereto as Exhibit B.

21.     Similarly, the September 24, 2020 NCNDA prohibited each of its signatories from disclosing confidential information, including the names or contact information of any contacts, to third parties, and further prohibits its signatories from exploring or undertaking business transactions with any person or entity whose name was provided by any signatory or intended third-party beneficiary to the NCNDA without prior written consent.

22.     After execution of and in reliance on the September 24, 2020 NCNDA, Plaintiffs performed additional work sourcing their connections to broker a transaction for the purchase and sale of PPE.  The parties to the September 24, 2020 NCNDA intended that Plaintiffs' contacts and work product be protected under the September 24, 2020 NCNDA, as set forth under the plain language of this contract.

23.     From September 24, 2020 forward, Plaintiffs continued spearheading detailed discussions, along with high level strategic decisions and detail-oriented work to bring a transaction for billions of boxes of PPE to fruition.  Plaintiffs' efforts included identifying buyers seeking billions of boxes of Cranberry Evolve Nitrile Gloves, including Lions Group.

24.     On September 24, 2020, Jo Ann Makous sent Mr. Ocomo a Letter of Attestation ("LOA") on behalf of Lions Group, which certified that Lions Group has sufficient funds available for the purchase and funding of 2.5 billion boxes of Cranberry Nitrile Gloves.



25. On that same date, Lions Group provided Mr. Ocomo with a Letter of Intent ("LOI") that it was ready, willing and able to purchase 2.5 billion boxes of Cranberry Nitrile Gloves, along with a Purchase Order for this quantity of PPE.

26. Based on the Letter of Attestation, Letter of Intent and Purchase Order, Plaintiffs and READS, through its principal, Richard Woods, continued to proceed with securing a seller for 2.5 billion boxes of Cranberry Nitrile Examination Gloves.

27. In particular, Plaintiffs sent the LOA and LOI addressed to Mr. Ocomo to READS and Richard Woods, pursuant to the terms of the August 24, 2020 NCNDA.

28. In addition, after these efforts concerning the purchase and sale of 2.5 billion boxes of Cranberry Nitrile Gloves, Plaintiffs used their well-sourced connections to explore and consummate another transaction for the purchase and sale of 2 billion boxes of Cranberry Nitrile Gloves.

29. Defendants Jake Yang, Lions Group and Jo Ann Makous signed additional LOAs and LOIs, which READS and/or Richard Woods forwarded to a seller group which included Leah Cox, Eric Brady, Maury Lyon and an individual named Brandon.

30. Upon information and belief, at the end of September and beginning of October 2020, Defendants began an orchestrated effort to circumvent Plaintiffs and consummate a transaction while excluding Plaintiffs.

31. In or around September or early October 2020, READS and its principal, Richard Woods, directly contacted the Lions Group, Jake Yang and/or Jo Ann Makous to consummate a transaction for the purchase and sale of Cranberry Nitrile Examination Gloves. These communications were made without Plaintiffs' knowledge and/or consent.



32.     In or around September or early October 2020, the Lions Group, Jake Yang and/or Jo Ann Makous also directly communicated with the seller group including Leah Cox, Eric Brady, Maury Lyon and an individual named Brandon, again to consummate a transaction for the purchase and sale of Cranberry Nitrile Examination Gloves.  These communications were made without Plaintiffs' knowledge and/or consent.

33.     Moreover, throughout September and October 2020, Defendants took repeated, continuous and intentional overt acts to circumvent Plaintiffs and use Plaintiffs' contacts, connections and work product to close one or multiple transactions for the purchase and sale of PPE, all while using the same or substantially similar LOAs and LOIs prepared by, commented on, and circulated by Plaintiffs to Defendants Richard Woods, READS, Lions Group, Jo Ann Makous, Natalie Makous and C&A Logistix.

34.     Upon information and belief, Lions Group ultimately took actual or constructive possession of billions of boxes of medical gloves from the seller group including Leah Cox, Eric Brady, Maury Lyon and an individual named Brandon, without including or otherwise compensating Plaintiffs.

35.     Upon information and belief, Lions Group and the remaining Defendants also furthered this and other transactions based on Plaintiffs' contacts, connections and hard work.

36.     This actual or constructive possession, or benefit to Defendants, would not have occurred but for Plaintiffs' contacts, connections and hard work.

37.     Accordingly, Plaintiffs are entitled to be compensated for Lions Group taking actual or constructive possession of billions of boxes of medical gloves, as well as for any benefit to Defendants furthering this and other transactions based on Plaintiffs' contacts, connections and hard work.



38.     Plaintiffs are further entitled to recover the full measure of their direct and actual damages due to breaches of the NCNDAs, the written and oral agreements between Defendants and Plaintiff, the fair market value of their work performed which benefitted Defendant, any and all consequential and special damages allowed under Florida law, and attorneys' fees and costs as alleged herein.

39.     However, Defendants have to date failed to compensate Plaintiffs for their damages and have instead refused to pay any monies whatsoever to Plaintiffs.

40.     The terms of the August 24, 2020 READS NCNDA and September 24, 2020 NCNDA provide for an award of costs and attorneys' fees to the prevailing party in any dispute. Plaintiffs have retained undersigned counsel to represent it in this action and is required to pay them a reasonable fee.

41.     All acts and omissions by Jo Ann Makous set out herein were performed by her on her own behalf, as well as principal and agent of Lions Group, whereby Jo Ann Makous was authorized by Lions Group to take or refrain from taking such acts.  Jo Ann Makous was also a business participant in each of the transactions described herein, as well as others unknown to Plaintiffs, and therefore personally benefitted from and is liable for her tortious conduct described herein.  Jo Ann Makous also brought her daughter, Natalie Makous, into the transaction to benefit from consummation of the transaction.

42.     Moreover, all acts and omissions by Jake Yang set out herein were performed by him on his own behalf, as well as principal and agent of Lions Group, whereby Jake Yang was authorized by Lions Group to take or refrain from taking such acts.



43.     In addition, all acts and omissions by Natalie Makous set out herein were performed by her on her own behalf, as well as principal and agent of C&A Logistix, whereby Natalie Makous was authorized by C&A Logistix to take or refrain from taking such acts.

### III.   CAUSES OF ACTION

### COUNT I
### Breach of Contract – NCNDA
### (against READS)

44.     Plaintiffs incorporate the allegations preceding the first count of the Complaint as though fully set forth herein.

45.     The August 24, 2020 READS NCNDA is a valid and binding contract between Plaintiffs and Defendants READS.

46.     The August 24, 2020 READS NCNDA provides, in relevant part:

3. CONFIDENTIALITY OBLIGATION.

3.1 During the Term, the Recipient shall at all times:

(a) Keep all of the Confidential Information strictly confidential and prevent any unauthorized access to, reproduction of, disclosure of, and/or use of the Confidential Information;

(b) Disclose the Confidential Information only to those officers, directors, and/or employees of the Recipient who need to know such information in order to carry out the Purpose of Disclosure (collectively, "**Representatives**" or separately, a "**Representative**"). In the event the employment or appointment of any Representative is terminated, the Recipient agrees to use its best efforts to recover any Confidential Information in such Representative's custody or control;

. . .

5. OWNERSHIP OF THE CONFIDENTIAL INFORMATION. The Recipient understands and agrees that all right, title, and interest in and to the Confidential Information shall be, and shall remain, vested in the Disclosing Party. Nothing in this Agreement (other than the right to review and evaluate the Confidential Information, solely for the Purpose of Disclosure), shall grant the Recipient any right or license, of any kind, with respect to the Confidential Information.

6. CONTACTS DEEMED EXCLUSIVE AND VALUABLE. Because of this Agreement, the Parties involved in this transaction or series of transactions may learn from one another,

12



or from their principals, the names, telephone numbers, email addresses, and other contact information of clients, borrowers, investors, lenders, agents, brokers, lending corporations, banks, manufacturers, individuals and/or trusts, or buyers and sellers hereinafter referred to as "Contacts." The Parties agree that the identities of the Contacts shall be recognized by the other Party as the exclusive and valuable Contacts of the introducing Party and shall remain so for the duration of this Agreement, including any renewal/roll-over period.

. . .

14. TERM OF OBLIGATION. This Agreement shall be effective from the Effective Date and for any particular Confidential Information shall continue to be in effect for three (3) years from the receipt of said Confidential Information ("**Term**"). The following Sections of this Agreement will survive any termination or expiration of this Agreement: 1-11 & 16.

(August 24, 2020 READS NCNDA at ¶¶ 3, 5-6.)

47.     Paragraph 8 of the August 24, 2020 READS NCNDA further provides:

8. NON-CIRCUMVENTION. Parties agree that, during the period of this partnership and for three (3) years after the termination of this Agreement, parties shall not, directly or indirectly, on behalf of itself or of anyone other than party, solicit or attempt to solicit any client, customer and or vendor of other parties for the purpose of providing similar or Competitive Services without the written consent. For purposes of this Agreement, the term "Competitive Services" means services in any of the business lines of the parties as of the date of termination of this Agreement, including lines or types of business contemplated by the parties to be available within six (6) months of termination of this Agreement, and the terms "Clients, Customers and or Vendors" means any person or entity (A) with whom the parties had contact on behalf of other parties during the term of this Agreement or (B) about whom the party learned confidential information or trade secrets during or as a result of its providing the Services to or on behalf of the other party, or (c) any client, customer or vendor of party. Parties shall not, directly or indirectly, on behalf of itself or of anyone other than that party, solicit or attempt to solicit any client, customer and or vendor of the other party for the purpose of providing similar or Competitive Services without the written consent of the other party, including for the avoidance of doubt, the parties introduces to the other parties.

(*Id*. at ¶ 8.)

48.     Defendant READS breached the NCNDA by, among other things, disclosing Confidential Information and circumventing Plaintiffs, in connection with transactions involving Lions Group, Jake Yang, Natalie Makous, C&A Logistix, Jo Ann Makous, Leah Cox, Eric Brady, Maury Lyon and an individual named Brandon.



49.     As set forth at Paragraphs 13 through 42, Defendant READS disclosed Confidential Information, including Plaintiffs' clients, customers and or vendors, to a seller group including Leah Cox, Eric Brady, Maury Lyon and an individual named Brandon, in a direct and blatant attempt to solicit Plaintiffs' clients, customers or venders for the purpose of providing similar or Competitive Services without the written consent of Plaintiffs.

50.     These communications were made without Plaintiffs' knowledge and/or Plaintiffs' consent.

51.     Defendant READS has breached Paragraphs 3, 5, 6, 8 and 14 of the August 24 READS NCNDA by failing to keep Plaintiffs' Confidential Information strictly confidential and prevent any unauthorized access to, reproduction of, disclosure of, and/or use of the Confidential Information, disclosing the Confidential Information without permission or consent of Plaintiffs, and, directly or indirectly, on behalf of itself or of anyone other than party, soliciting or attempt to solicit any client, customer and or vendor of Plaintiffs for the purpose of providing similar or Competitive Services without the written consent of Plaintiffs.

52.     Defendant READS' breaches were willful, intentional, wanton, malicious, in bad faith and based on acts of dishonesty.

53.     Moreover, Defendant READS' breaches were done with the intent to defraud Plaintiffs.  Defendant READS' actions in fact defrauded Plaintiffs.

54.     As such, Plaintiffs have suffered actual and direct damages due to Defendant READS' failure to comply with its obligations under the August 24, 2020 READS NCNDA.

BFW
BRODSKY FOTIU-WOJTOWICZ

### COUNT II
### Breach of Contract – NCNDA
### (against Richard Woods)

55.     Plaintiffs incorporate the allegations preceding the first count of the Complaint as though fully set forth herein.

56.     The August 24, 2020 READS NCNDA is a valid and binding contract between Plaintiffs and Defendant Richard Woods.

57.     The August 24, 2020 READS NCNDA provides, in relevant part:

3. CONFIDENTIALITY OBLIGATION.

   3.1 During the Term, the Recipient shall at all times:

   (a) Keep all of the Confidential Information strictly confidential and prevent any unauthorized access to, reproduction of, disclosure of, and/or use of the Confidential Information;

   (b) Disclose the Confidential Information only to those officers, directors, and/or employees of the Recipient who need to know such information in order to carry out the **Purpose of Disclosure** (collectively, "**Representatives**" or separately, a "**Representative**"). In the event the employment or appointment of any Representative is terminated, the Recipient agrees to use its best efforts to recover any Confidential Information in such Representative's custody or control;

. . .

5.   OWNERSHIP OF THE CONFIDENTIAL INFORMATION. The Recipient understands and agrees that all right, title, and interest in and to the Confidential Information shall be, and shall remain, vested in the Disclosing Party. Nothing in this Agreement (other than the right to review and evaluate the Confidential Information, solely for the Purpose of Disclosure), shall grant the Recipient any right or license, of any kind, with respect to the Confidential Information.

6.   CONTACTS DEEMED EXCLUSIVE AND VALUABLE. Because of this Agreement, the Parties involved in this transaction or series of transactions may learn from one another, or from their principals, the names, telephone numbers, email addresses, and other contact information of clients, borrowers, investors, lenders, agents, brokers, lending corporations, banks, manufacturers, individuals and/or trusts, or buyers and sellers hereinafter referred to as "Contacts." The Parties agree that the identities of the Contacts shall be recognized by the other Party as the exclusive and valuable Contacts of the introducing Party and shall remain so for the duration of this Agreement, including any renewal/roll-over period.

15



. . .

14. <u>TERM OF OBLIGATION</u>. This Agreement shall be effective from the Effective Date and for any particular Confidential Information shall continue to be in effect for three (3) years from the receipt of said Confidential Information ("**Term**"). The following Sections of this Agreement will survive any termination or expiration of this Agreement: 1-11 & 16.

(August 24, 2020 READS NCNDA at ¶¶ 3, 5-6.)

58.     Paragraph 8 of the August 24, 2020 READS NCNDA further provides:

8. <u>NON-CIRCUMVENTION</u>. Parties agree that, during the period of this partnership and for three (3) years after the termination of this Agreement, parties shall not, directly or indirectly, on behalf of itself or of anyone other than party, solicit or attempt to solicit any client, customer and or vendor of other parties for the purpose of providing similar or Competitive Services without the written consent. For purposes of this Agreement, the term "Competitive Services" means services in any of the business lines of the parties as of the date of termination of this Agreement, including lines or types of business contemplated by the parties to be available within six (6) months of termination of this Agreement, and the terms "Clients, Customers and or Vendors" means any person or entity (A) with whom the parties had contact on behalf of other parties during the term of this Agreement or (B) about whom the party learned confidential information or trade secrets during or as a result of its providing the Services to or on behalf of the other party, or (c) any client, customer or vendor of party**.** Parties shall not, directly or indirectly, on behalf of itself or of anyone other than that party, solicit or attempt to solicit any client, customer and or vendor of the other party for the purpose of providing similar or Competitive Services without the written consent of the other party, including for the avoidance of doubt, the parties introduces to the other parties.

(*Id*. at ¶ 8.)

59.     Defendant Richard Woods breached the NCNDA by, among other things, disclosing Confidential Information and circumventing Plaintiffs, in connection with transactions involving Lions Group, Jake Yang, Natalie Makous, C&A Logistix, Jo Ann Makous, Leah Cox, Eric Brady, Maury Lyon and an individual named Brandon.

60.     As set forth at Paragraphs 13 through 42, Defendant Richard Woods disclosed Confidential Information, including Plaintiffs' clients, customers and or vendors, to a seller group including Leah Cox, Eric Brady, Maury Lyon and an individual named Brandon, in a direct and

16



BRODSKY FOTIU-WOJTOWICZ

blatant attempt to solicit Plaintiffs' clients, customers or venders for the purpose of providing similar or Competitive Services without the written consent of Plaintiffs.

61.     These communications were made without Plaintiffs' knowledge and/or Plaintiffs' consent.

62.     Defendant Richard Woods has breached Paragraphs 3, 5, 6, 8 and 14 of the August 24 READS NCNDA by failing to keep Plaintiffs' Confidential Information strictly confidential and prevent any unauthorized access to, reproduction of, disclosure of, and/or use of the Confidential Information, disclosing the Confidential Information without permission or consent of Plaintiffs, and, directly or indirectly, on behalf of itself or of anyone other than party, soliciting or attempt to solicit any client, customer and or vendor of Plaintiffs for the purpose of providing similar or Competitive Services without the written consent of Plaintiffs.

63.     Defendant Richard Woods' breaches were willful, intentional, wanton, malicious, in bad faith and based on acts of dishonesty.

64.     Moreover, Defendant Richard Woods' breaches were done with the intent to defraud Plaintiffs.  Defendant READS' actions in fact defrauded Plaintiffs.

65.     As such, Plaintiffs have suffered actual and direct damages due to Defendant Richard Woods' failure to comply with his obligations under the August 24, 2020 READS NCNDA.

### COUNT III
### Breach of Contract – NCNDA
### (against Lion's Group)

66.     Plaintiffs incorporate the allegations preceding the first count of the Complaint as though fully set forth herein.



67.     The September 24, 2020 NCNDA is a valid and binding contract between Plaintiffs,

Jake Yang, Lions Group and Jo Ann Makous, in her capacity as the attorney representative of Jake

Yang and Lions Group.

68.     The September 24, 2020 NCNDA provides, in relevant part:

3. <u>CONFIDENTIALITY OBLIGATION.</u>

3.1 During the Term, the Recipient shall at all times:

(a) Keep all of the Confidential Information strictly confidential and prevent any
unauthorized access to, reproduction of, disclosure of, and/or use of the Confidential
Information;

(b) Disclose the Confidential Information only to those officers, directors, and/or
employees of the Recipient who need to know such information in order to carry out
the Purpose of Disclosure (collectively, "**Representatives**" or separately, a
"**Representative**"). In the event the employment or appointment of any
Representative is terminated, the Recipient agrees to use its best efforts to recover
any Confidential Information in such Representative's custody or control;

. . .

5.   <u>OWNERSHIP OF THE CONFIDENTIAL INFORMATION.</u> The Recipient
understands and agrees that all right, title, and interest in and to the Confidential
Information shall be, and shall remain, vested in the Disclosing Party. Nothing in this
Agreement (other than the right to review and evaluate the Confidential Information, solely
for the Purpose of Disclosure), shall grant the Recipient any right or license, of any kind,
with respect to the Confidential Information.

6.   <u>CONTACTS DEEMED EXCLUSIVE AND VALUABLE.</u> Because of this Agreement,
the Parties involved in this transaction or series of transactions may learn from one another,
or from their principals, the names, telephone numbers, email addresses, and other contact
information of clients, borrowers, investors, lenders, agents, brokers, lending corporations,
banks, manufacturers, individuals and/or trusts, or buyers and sellers hereinafter referred
to as "Contacts." The Parties agree that the identities of the Contacts shall be recognized
by the other Party as the exclusive and valuable Contacts of the introducing Party and shall
remain so for the duration of this Agreement, including any renewal/roll-over period.

. . .

14. <u>TERM OF OBLIGATION.</u> This Agreement shall be effective from the Effective Date
and for any particular Confidential Information shall continue to be in effect for three (3)
years from the receipt of said Confidential Information ("**Term**"). The following Sections
of this Agreement will survive any termination or expiration of this Agreement: 1-11 & 16.

(September 24, 2020 NCNDA at ¶¶ 3, 5-6.)



69.     Paragraph 8 of the September 24, 2020 NCNDA further provides:

8. <u>NON-CIRCUMVENTION</u>. Parties agree that, during the period of this partnership and for three (3) years after the termination of this Agreement, parties shall not, directly or indirectly, on behalf of itself or of anyone other than party, solicit or attempt to solicit any client, customer and or vendor of other parties for the purpose of providing similar or Competitive Services without the written consent. For purposes of this Agreement, the term "Competitive Services" means services in any of the business lines of the parties as of the date of termination of this Agreement, including lines or types of business contemplated by the parties to be available within six (6) months of termination of this Agreement, and the terms "Clients, Customers and or Vendors" means any person or entity (A) with whom the parties had contact on behalf of other parties during the term of this Agreement or (B) about whom the party learned confidential information or trade secrets during or as a result of its providing the Services to or on behalf of the other party, or (c) any client, customer or vendor of party**.** Parties shall not, directly or indirectly, on behalf of itself or of anyone other than that party, solicit or attempt to solicit any client, customer and or vendor of the other party for the purpose of providing similar or Competitive Services without the written consent of the other party, including for the avoidance of doubt, the parties introduces to the other parties.

(*Id*. at ¶ 8.)

70.     Defendant Lions Group breached the NCNDA by, among other things, disclosing Confidential Information and circumventing Plaintiffs, in connection with transactions involving Lions Group, Jake Yang, Natalie Makous, C&A Logistix, Jo Ann Makous, Leah Cox, Eric Brady, Maury Lyon and an individual named Brandon.

71.     As set forth at Paragraphs 13 through 42, Defendant Lions Group disclosed Confidential Information, as defined under the September 24, 2020 NCNDA, to a seller group including Leah Cox, Eric Brady, Maury Lyon and an individual named Brandon, in a direct and blatant attempt to solicit Plaintiffs' clients, customers or venders for the purpose of providing similar or Competitive Services without the written consent of Plaintiffs.

72.     These communications were made without Plaintiffs' knowledge and/or Plaintiffs' consent.

73.     Defendant Lions Group has breached Paragraphs 3, 5, 6, 8 and 14 of the September 24 NCNDA by failing to keep Plaintiffs' Confidential Information strictly confidential and prevent



any unauthorized access to, reproduction of, disclosure of, and/or use of the Confidential Information, disclosing the Confidential Information without permission or consent of Plaintiffs, and, directly or indirectly, on behalf of itself or of anyone other than party, soliciting or attempt to solicit any client, customer and or vendor of Plaintiffs for the purpose of providing similar or Competitive Services without the written consent of Plaintiffs.

74.    Defendant Lions Group's breaches were willful, intentional, wanton, malicious, in bad faith and based on acts of dishonesty.

75.    Moreover, Defendant Lions Group's breaches were done with the intent to defraud Plaintiffs.  Defendant Lions Group's actions in fact defrauded Plaintiffs.

76.    As such, Plaintiffs have suffered actual and direct damages due to Defendant Lions Group's failure to comply with its obligations under the September 24, 2020 NCNDA.

### Count IV
### Breach of Contract -- NCNDA
### (against Jake Yang)

77.    Plaintiffs incorporate the allegations preceding the first count of the Complaint as though fully set forth herein.

78.    The September 24, 2020 NCNDA is a valid and binding contract between Plaintiffs, Jake Yang, Lions Group and Jo Ann Makous, in her capacity as the attorney representative of Jake Yang and Lions Group.

79.    The September 24, 2020 NCNDA provides, in relevant part:

3. CONFIDENTIALITY OBLIGATION.

3.1 During the Term, the Recipient shall at all times:

(a) Keep all of the Confidential Information strictly confidential and prevent any unauthorized access to, reproduction of, disclosure of, and/or use of the Confidential Information;

20



(b) Disclose the Confidential Information only to those officers, directors, and/or employees of the Recipient who need to know such information in order to carry out the Purpose of Disclosure (collectively, "**Representatives**" or separately, a "**Representative**"). In the event the employment or appointment of any Representative is terminated, the Recipient agrees to use its best efforts to recover any Confidential Information in such Representative's custody or control;

. . .

5.   OWNERSHIP OF THE CONFIDENTIAL INFORMATION. The Recipient understands and agrees that all right, title, and interest in and to the Confidential Information shall be, and shall remain, vested in the Disclosing Party. Nothing in this Agreement (other than the right to review and evaluate the Confidential Information, solely for the Purpose of Disclosure), shall grant the Recipient any right or license, of any kind, with respect to the Confidential Information.

6.   CONTACTS DEEMED EXCLUSIVE AND VALUABLE. Because of this Agreement, the Parties involved in this transaction or series of transactions may learn from one another, or from their principals, the names, telephone numbers, email addresses, and other contact information of clients, borrowers, investors, lenders, agents, brokers, lending corporations, banks, manufacturers, individuals and/or trusts, or buyers and sellers hereinafter referred to as "Contacts." The Parties agree that the identities of the Contacts shall be recognized by the other Party as the exclusive and valuable Contacts of the introducing Party and shall remain so for the duration of this Agreement, including any renewal/roll-over period.

. . .

14. TERM OF OBLIGATION. This Agreement shall be effective from the Effective Date and for any particular Confidential Information shall continue to be in effect for three (3) years from the receipt of said Confidential Information ("**Term**"). The following Sections of this Agreement will survive any termination or expiration of this Agreement: 1-11 & 16.

(September 24, 2020 NCNDA at ¶¶ 3, 5-6.)

80.      Paragraph 8 of the September 24, 2020 NCNDA further provides:

8. NON-CIRCUMVENTION. Parties agree that, during the period of this partnership and for three (3) years after the termination of this Agreement, parties shall not, directly or indirectly, on behalf of itself or of anyone other than party, solicit or attempt to solicit any client, customer and or vendor of other parties for the purpose of providing similar or Competitive Services without the written consent. For purposes of this Agreement, the term "Competitive Services" means services in any of the business lines of the parties as of the date of termination of this Agreement, including lines or types of business contemplated by the parties to be available within six (6) months of termination of this Agreement, and the terms "Clients, Customers and or Vendors" means any person or entity (A) with whom the parties had contact on behalf of other parties during the term of this Agreement or (B) about whom the party learned confidential information or trade secrets during or as a result of its providing the Services to or on behalf of the other party, or (c) any client, customer or vendor of party. Parties shall not, directly or indirectly, on behalf of itself or of anyone

21



other than that party, solicit or attempt to solicit any client, customer and or vendor of the other party for the purpose of providing similar or Competitive Services without the written consent of the other party, including for the avoidance of doubt, the parties introduces to the other parties.

(*Id.* at ¶ 8.)

81.     Defendant Jake Yang breached the NCNDA by, among other things, disclosing Confidential Information and circumventing Plaintiffs, in connection with transactions involving him, Lions Group, Natalie Makous, C&A Logistix, Jo Ann Makous, Leah Cox, Eric Brady, Maury Lyon and an individual named Brandon.

82.     As set forth at Paragraphs 13 through 42, Defendant Jake Yang disclosed Confidential Information, as defined under the September 24, 2020 NCNDA, to a seller group including Leah Cox, Eric Brady, Maury Lyon and an individual named Brandon, in a direct and blatant attempt to solicit Plaintiffs' clients, customers or venders for the purpose of providing similar or Competitive Services without the written consent of Plaintiffs.

83.     These communications were made without Plaintiffs' knowledge and/or Plaintiffs' consent.

84.     Defendant Jake Yang has breached Paragraphs 3, 5, 6, 8 and 14 of the September 24 NCNDA by failing to keep Plaintiffs' Confidential Information strictly confidential and prevent any unauthorized access to, reproduction of, disclosure of, and/or use of the Confidential Information, disclosing the Confidential Information without permission or consent of Plaintiffs, and, directly or indirectly, on behalf of itself or of anyone other than party, soliciting or attempt to solicit any client, customer and or vendor of Plaintiffs for the purpose of providing similar or Competitive Services without the written consent of Plaintiffs.

85.     Defendant Jake Yang's breaches were willful, intentional, wanton, malicious, in bad faith and based on acts of dishonesty.



86.     Moreover, Defendant Jake Yang's breaches were done with the intent to defraud Plaintiffs.  Defendant Jake Yang's actions in fact defrauded Plaintiffs.

87.     As such, Plaintiffs have suffered actual and direct damages due to Defendant Jake Yang's failure to comply with his obligations under the September 24, 2020 NCNDA.

<u>**COUNT V**</u>
**Breach of Contract – NCNDA**
**(against Jo Ann Makous)**

88.     Plaintiffs incorporate the allegations preceding the first count of the Complaint as though fully set forth herein.

89.     The September 24, 2020 NCNDA is a valid and binding contract between Plaintiffs, Jake Yang, Lions Group and Jo Ann Makous, in her capacity as the attorney representative of Jake Yang and Lions Group.

90.     The September 24, 2020 NCNDA provides, in relevant part:

3. <u>CONFIDENTIALITY OBLIGATION.</u>

3.1 During the Term, the Recipient shall at all times:

(a) Keep all of the Confidential Information strictly confidential and prevent any unauthorized access to, reproduction of, disclosure of, and/or use of the Confidential Information;

(b) Disclose the Confidential Information only to those officers, directors, and/or employees of the Recipient who need to know such information in order to carry out the Purpose of Disclosure (collectively, "**Representatives**" or separately, a "**Representative**"). In the event the employment or appointment of any Representative is terminated, the Recipient agrees to use its best efforts to recover any Confidential Information in such Representative's custody or control;

. . .

5. <u>OWNERSHIP OF THE CONFIDENTIAL INFORMATION.</u> The Recipient understands and agrees that all right, title, and interest in and to the Confidential Information shall be, and shall remain, vested in the Disclosing Party. Nothing in this Agreement (other than the right to review and evaluate the Confidential Information, solely for the Purpose of Disclosure), shall grant the Recipient any right or license, of any kind, with respect to the Confidential Information.

23



6.  <u>CONTACTS DEEMED EXCLUSIVE AND VALUABLE.</u> Because of this Agreement, the Parties involved in this transaction or series of transactions may learn from one another, or from their principals, the names, telephone numbers, email addresses, and other contact information of clients, borrowers, investors, lenders, agents, brokers, lending corporations, banks, manufacturers, individuals and/or trusts, or buyers and sellers hereinafter referred to as "Contacts." The Parties agree that the identities of the Contacts shall be recognized by the other Party as the exclusive and valuable Contacts of the introducing Party and shall remain so for the duration of this Agreement, including any renewal/roll-over period.

. . .

14.  <u>TERM OF OBLIGATION</u>. This Agreement shall be effective from the Effective Date and for any particular Confidential Information shall continue to be in effect for three (3) years from the receipt of said Confidential Information ("**Term**"). The following Sections of this Agreement will survive any termination or expiration of this Agreement: 1-11 & 16.

(September 24, 2020 NCNDA at ¶¶ 3, 5-6.)

91.     Paragraph 8 of the September 24, 2020 NCNDA further provides:

8.  <u>NON-CIRCUMVENTION</u>. Parties agree that, during the period of this partnership and for three (3) years after the termination of this Agreement, parties shall not, directly or indirectly, on behalf of itself or of anyone other than party, solicit or attempt to solicit any client, customer and or vendor of other parties for the purpose of providing similar or Competitive Services without the written consent. For purposes of this Agreement, the term "Competitive Services" means services in any of the business lines of the parties as of the date of termination of this Agreement, including lines or types of business contemplated by the parties to be available within six (6) months of termination of this Agreement, and the terms "Clients, Customers and Vendors" means any person or entity (A) with whom the parties had contact on behalf of other parties during the term of this Agreement or (B) about whom the party learned confidential information or trade secrets during or as a result of its providing the Services to or on behalf of the other party, or (c) any client, customer or vendor of party**.** Parties shall not, directly or indirectly, on behalf of itself or of anyone other than that party, solicit or attempt to solicit any client, customer and or vendor of the other party for the purpose of providing similar or Competitive Services without the written consent of the other party, including for the avoidance of doubt, the parties introduces to the other parties.

(*Id*. at ¶ 8.)

92.     Defendant Jo Ann Makous breached the NCNDA by, among other things, disclosing Confidential Information and circumventing Plaintiffs, in connection with transactions involving her, Jake Yang, Lions Group, Natalie Makous, C&A Logistix, Leah Cox, Eric Brady, Maury Lyon and an individual named Brandon.



BRODSKY FOTIU-WOJTOWICZ

93.     As set forth at Paragraphs 13 through 42, Defendant Jo Ann Makous disclosed Confidential Information, as defined under the September 24, 2020 NCNDA, to a seller group including Leah Cox, Eric Brady, Maury Lyon and an individual named Brandon, in a direct and blatant attempt to solicit Plaintiffs' clients, customers or venders for the purpose of providing similar or Competitive Services without the written consent of Plaintiffs.

94.     These communications were made without Plaintiffs' knowledge and/or Plaintiffs' consent.

95.     Defendant Jo Ann Makous has breached Paragraphs 3, 5, 6, 8 and 14 of the September 24, 2020 NCNDA by failing to keep Plaintiffs' Confidential Information strictly confidential and prevent any unauthorized access to, reproduction of, disclosure of, and/or use of the Confidential Information, disclosing the Confidential Information without permission or consent of Plaintiffs, and, directly or indirectly, on behalf of itself or of anyone other than party, soliciting or attempt to solicit any client, customer and or vendor of Plaintiffs for the purpose of providing similar or Competitive Services without the written consent of Plaintiffs.

96.     Defendant Jo Ann Makous breached the September 24, 2020 NCNDA while acting on her own behalf and as principal and agent of Lions Group.

97.     Defendant Jo Ann Makous' breaches were willful, intentional, wanton, malicious, in bad faith and based on acts of dishonesty.

98.     Moreover, Defendant Jo Ann Makous' breaches were done with the intent to defraud Plaintiffs.  Defendant Jo Ann Makous' actions in fact defrauded Plaintiffs.

99.     As such, Plaintiffs have suffered actual and direct damages due to Defendant Jo Ann Makous' failure to comply with her obligations under the September 24, 2020 NCNDA.



<u>C<small>OUNT</small> VI</u>
**Unjust Enrichment**
**(against all Defendants)**

100.     Plaintiffs incorporate the allegations preceding the first count of the Complaint as though fully set forth herein.

101.     This claim is alleged in the alternative to Counts I, II, III, IV and V solely as to Defendants READS, Richard Woods, Lions Group, Jake Yang and Jo Ann Makous.

102.     Beginning in August 2020, Plaintiffs provided Defendants with its contacts, connections and work performed in furtherance of transactions for the purchase and sale of PPE.

103.     Defendants used the contacts, connections and work performed by Plaintiffs to explore and consummate transactions for the purchase and sale of PPE, without notifying or involving Plaintiffs.

104.     READS, Lions Group, C&A Logistix and Leah Cox thereby benefited from the contacts, connections and work performed by Plaintiff.

105.     Separate and apart from any benefits conferred on READS, Lions Group and/or C&A Logistix, Richard Woods, Jake Yang, Jo Ann Makous and Natalie Makous were personally enriched by Plaintiffs' contacts, connections and work.

106.     Accordingly, Defendants voluntarily accepted and retained the benefits conferred by Plaintiffs.

107.     Defendants did not provide any compensation to Plaintiffs.

108.     It would be manifestly unjust and inequitable to permit Defendants to retain the value of Plaintiffs' contacts, connections and work without compensating Plaintiffs for the immense value of sourcing and providing this information, as well as for the immense value of Plaintiffs indispensable and hard work.



<u>COUNT VII</u>
**Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA")**
**(against all Defendants)**

109.    Plaintiffs incorporate the allegations preceding the first count of the Complaint as though fully set forth herein.

110.    Defendants engaged in deceptive and unfair trade practices by, among other things:

(a)    Disclosing Plaintiffs' proprietary contacts and connections without Plaintiffs' knowledge or consent;

(b)    Representing to third parties that Defendants were the primary contacts for the subject transactions for the purchase and sale of PPE and furthering these transactions, without Plaintiffs' knowledge, consent or participation;

(c)    Misappropriating Plaintiffs' contacts, connections and work to explore, further and consummate transactions for the purchase and sale of PPE, while intentionally circumventing Plaintiffs; and

(d)    Engaging in numerous overt acts, as alleged in Paragraphs 13 through 42, to explore business opportunities and consummate transactions for the purchase and sale of PPE based in whole or in part on the contacts, connections and hard work of Plaintiffs, without Plaintiffs' involvement, with the intent to misappropriate commissions duly owed to Plaintiffs.

111.    These deceptive and unfair trade practices constituted fraudulent acts.

112.    Defendants willfully engaged in each of these deceptive trade practices, with full knowing that its trade practices were deceptive.

113.    Moreover, Defendants' actions were willful, intentional, wanton, malicious, in bad faith and based on acts of dishonesty.  Each of Defendants' fraudulent and deceptive trade practices were also undertaken with the intent to defraud Plaintiffs and did, in fact, defraud Plaintiffs.

114.    Each of the Defendants' officers, directors or representatives, Jake Yang, Jo Ann Makous and Natalie Makous, personally orchestrated, directed, or willfully participated in the aforementioned tortious conduct and accordingly may be held personally liable for these actions,



which were not undertaken solely by reason of being officers, directors and/or representatives of Lions Group and/or C&A Logistix, respectively.

115.    As direct and proximate result of the foregoing, Plaintiffs have suffered substantial damages.

116.    Plaintiffs are entitled to attorneys' fees under Fla. Stat. § 501.2105.

117.    In addition, Plaintiffs are likely to be damaged by Defendants' deceptive trade practices in the future.

**COUNT VIII**
**Civil Conspiracy**
**(against all Defendants)**

118.    Plaintiffs incorporate the allegations preceding the first count of the Complaint as though fully set forth herein.

119.    Richard Woods and READS; Lions Group, Jake Yang and Jo Ann Makous; C&A Logistix and Natalie Makous; and Leah Cox, respectively, each agreed to perform unlawful acts in furtherance of the wrongful conspiracy, as set forth herein.[1]

120.    In furtherance of their wrongful conspiracy, Defendants performed numerous overt acts, including but not limited to those set forth in Paragraphs 13 through 42 of this Complaint, as well as the following:

(a)  Misappropriating the contacts, connections and work performed by Plaintiff,

(b)  Using Plaintiffs' contacts, connections and work to explore business opportunities and/or consummate a transaction for the purchase and sale of PPE, without Plaintiffs' knowledge, consent or participation, and

(c)  Failing and refusing to provide any compensation to Plaintiffs.

---

[1] Plaintiffs civil conspiracy claim is not based on any agreement between any of the following groups of Defendants: (a) Richard Woods and READS, (b) Lions Group, Jo Ann Makous and Jake Yang, or (c) C&A Logistix and Natalie Makous.



121.     Defendants willfully engaged in each of these overt acts, with full knowledge that their acts were unlawful.

122.     In fact, Defendants' actions were willful, intentional, wanton, malicious, in bad faith and based on acts of dishonesty.  Each of Defendants' overt acts were also undertaken with the intent to defraud Plaintiffs and did, in fact, defraud Plaintiffs.

123.     Each of the Defendants' officers, directors or representatives, including Richard Woods, Jake Yang, Jo Ann Makous and Natalie Makous personally orchestrated, directed, or willfully participated in the aforementioned tortious conduct and accordingly may be held personally liable for these actions, which were not undertaken solely by reason of being officers, directors and/or representatives of READS, Lions Group and/or C&A Logistix, respectively.

124.     As a direct and proximate result of the acts committed pursuant to Defendants' wrongful conspiracy, Plaintiffs have suffered substantial damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against the Defendants as follows:

A.     Awarding Plaintiffs all actual and direct damages caused by Defendants' wrongful conduct;

B.     Awarding Plaintiffs all consequential and/or special damages caused by Defendants' wrongful conduct, to the full extent permissible under Florida law;

C.     Awarding Plaintiffs damages from all claims, losses, liabilities, damages, expenses and costs including, without limitation, reasonable fees for attorneys, expert witnesses and court costs, pursuant to Paragraph 16 of the August 24, 2020 READS NCNDA;



BRODSKY FOTIU-WOJTOWICZ

D.     Awarding Plaintiffs damages from all claims, losses, liabilities, damages, expenses and costs including, without limitation, reasonable fees for attorneys, expert witnesses and court costs, pursuant to Paragraph 16 of the September 24, 2020 NCNDA;

E.     Awarding Plaintiffs reasonable attorneys and costs under Fla. Stat. § 501.2105; and

F.     Awarding Plaintiffs such further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands a trial by jury on all issues so triable.

Dated December 14, 2020.

BRODSKY FOTIU-WOJTOWICZ

Respectfully submitted,

By: _/s/___ *Joshua Truppman*_____
Joshua Truppman, Esq.
Florida Bar No. 111795
Benjamin H. Brodsky, Esq.
Florida Bar No. 73748
Brodsky Fotiu-Wojtowicz, PLLC
*Counsel for Plaintiffs*
200 SE 1st Street, Suite 400
Miami, Florida 33131
Tel:  305-503-5054
Fax: 786-749-7644
joshua@bfwlegal.com
bbrodsky@bfwlegal.com
docketing@bfwlegal.com

AND

Barry L. Rothberg, Esq.,
Florida Bar No. 160873
GREENBERG TRAURIG PA
*Counsel for Plaintiffs*
333 SE 2nd Ave., Suite 4400
Miami, FL 33131
305.579.0500
rothbergb@gtlaw.com

BFW
BRODSKY FOTIU-WOJTOWICZ