**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-cv-25081-COOKE/DAMIAN

CANOBINOTI, LLC and DAVID OCOMO,

     Plaintiffs,

vs.

RICHARD WOODS, REAL ESTATE
ACQUISITION DEVELOPMENT SALES,
LLC d/b/a READS-HEALTHCARE, LLC,
THE LIONS GROUP, LLC, JAKE YANG,
JO ANN MAKOUS, C&A LOGISTIX, LLC,
NATALIE MAKOUS, LEAH COX, and
IANUA MARKET LTD.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION ON
## DEFENDANTS IANUA MARKET LTD. AND LEAH COX'S MOTION
## TO DISMISS FOR LACK OF PERSONAL JURISDICTION [ECF NO. 30] AND
## PLAINTIFFS' MOTION FOR LEAVE TO SUPPLEMENT RESPONSE [ECF NO. 54]

THIS CAUSE is before the Court on Defendants Leah Cox ("Cox") and IANUA Market, Ltd.'s ("IANUA") (collectively "the IANUA Defendants") Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion"), filed March 30, 2021 [ECF No. 30], and Plaintiffs' Motion for Leave to Supplement their Response to the Motion, filed November 10, 2021. [ECF No. 54]. These Motions were referred to the undersigned by the Honorable Marcia G. Cooke, United States District Judge, for a Report and Recommendation. [ECF No. 73]. *See* 28 U.S.C. § 636(b)(1)(B).

The undersigned has reviewed the parties' memoranda [ECF Nos. 32, 44, 60, and 61], the pertinent portions of the record, and all relevant authorities and is otherwise fully advised

in the premises. For the reasons that follow, it is recommended that the IANUA Defendants'
Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 30] be granted and that
Plaintiffs' Motion for Leave to Supplement their Response [ECF No. 54] be denied.

## I.    BACKGROUND

This action stems from alleged transactions involving the purchase and sale of
Personal Protective Equipment ("PPE"). On December 14, 2020, Plaintiffs, Canobinoti, LLC
("Canobinoti") and David Ocomo ("Ocomo") (collectively, "Plaintiffs"), filed a Complaint
against nine defendants, including the IANUA Defendants, seeking damages stemming from
the alleged PPE transactions. [ECF No. 1]. Plaintiffs then filed a First Amended Complaint
("FAC"), which is the operative pleading in this action, on December 17, 2020. [ECF No. 5].

The following facts are taken from the FAC, which the Court accepts as true for
purposes of determining the Motion. In the FAC, Plaintiffs allege they leveraged their global
connections to connect buyers and sellers of large quantities of PPE products. FAC at ¶ 14.
These efforts allegedly involved Plaintiffs reaching out to well-known and established
personal connections, as well as sourcing, contacting, and verifying the legitimacy of
purchasers and sellers of PPE. *Id.* To protect their proprietary interest in their contacts and to
avoid being sidestepped after disclosing their contacts, Plaintiff Ocomo, both individually and
by and through his wholly owned Company, Plaintiff Canobinoti, signed or was otherwise
bound by and party to several Non-Circumvention and Non-Disclosure Agreements. *Id.* at ¶
15.

According to the allegations in the FAC, in August 2020, Plaintiffs introduced
Defendants Real Estate Acquisition Development Sales, LLC ("READS") and its principal,
Defendant Richard Woods ("Woods"), to several potential buyers of large quantities of PPE

after the parties signed a Mutual Confidentiality and Non-Disclosure Non-Circumvention Agreement ("NCNDA"). *Id.* at ¶¶ 16–17. One of these potential buyers was Defendant The Lions Group, LLC ("Lions Group"). *Id.* at ¶ 17. Plaintiffs allege that Defendant Woods did not have a pre-existing relationship with Defendant Lions Group until Plaintiffs introduced them to each other. *Id.* Plaintiffs claim they later introduced Defendants READS and Woods to Defendants Lions Group, Jake Yang, and Jo Ann Makous. *Id.* at ¶ 19. These introductions and each of Plaintiffs' actions, which took place in August and September 2020, were allegedly subject to the terms of the NCNDA. *Id.* at ¶ 20. Plaintiffs allege the NCNDA prohibited Plaintiffs and Defendants READS and Woods from disclosing confidential information, including the names or contact information of any contacts, to third parties, and further prohibited its signatories from exploring or undertaking business transactions with any person or entity whose name was provided by any party to the NCNDA without prior written consent. *Id.*

Plaintiffs allege they performed additional work sourcing their connections to broker a transaction for the purchase and sale of PPE, and that such efforts were protected by the NCNDAs signed by the relevant parties. *Id.* at ¶ 23. Plaintiffs' efforts allegedly included identifying buyers seeking billions of boxes of Cranberry Evolve Nitrile Gloves ("Examination Gloves"), including Defendant Lions Group. *Id.* at ¶ 24.

According to the FAC, on September 24, 2020, Defendant Jo Ann Makous sent Plaintiff Ocomo a Letter of Attestation ("LOA") on behalf of Defendant Lions Group, certifying that Lions Group had sufficient funds available for the purchase and funding of 2.5 billion boxes of Examination Gloves. *Id.* at ¶ 25. On that same date, Defendant Lions Group provided Plaintiff Ocomo with a Letter of Intent ("LOI") indicating that it was ready, willing,

and able to purchase 2.5 billion boxes of Examination Gloves along with a Purchase Order for same. *Id.* at ¶ 26. Plaintiffs allege they sent the LOA and LOI, addressed to Ocomo, to Defendants READS and Woods, pursuant to the NCNDA, to secure a seller for the 2.5 billion boxes of Examination Gloves. *Id.* at ¶¶ 27–28.

As further alleged in the FAC, Defendants Yang, Lions Group, and Jo Ann Makous signed additional LOAs and LOIs, which Defendants READS or Woods forwarded to a seller group that included the IANUA Defendants, in addition to other individuals not included as defendants in this action. *Id.* at ¶ 30. Plaintiffs allege that at all material times, Defendant Cox acted with the express and implied authority of Defendant IANUA. *Id.* at ¶ 31. Additionally, Plaintiffs allege Cox undertook all actions alleged in the FAC to further the subject transaction(s) by and on behalf of IANUA. *Id.*

According to the allegations in the FAC, at the end of September and beginning of October 2020, Defendants began an orchestrated effort to circumvent Plaintiffs and consummate a transaction without including Plaintiffs. *Id.* at ¶ 36. Defendants READS and Woods allegedly contacted Defendants Lions Group, Yang, or Jo Ann Makous to consummate a transaction for the purchase and sale of Examination Gloves. *Id.* at ¶ 37. These communications were allegedly made without Plaintiffs' knowledge or consent. *Id.* Additionally, around that same time, Defendants Lions Group, Yang, or Jo Ann Makous also allegedly communicated with the seller group, including the IANUA Defendants and others, to consummate a transaction for the purchase and sale of Examination Gloves. *Id.* at ¶ 38. These communications were also allegedly made without Plaintiffs' knowledge or consent. *Id.* Plaintiffs allege that throughout September and October 2020, Defendants engaged in repeated, continuous and intentional overt acts to circumvent Plaintiffs and use

Plaintiffs' contacts, connections, and work product to close one or multiple transactions for the purchase and sale of PPE, all while using the same or substantially similar LOAs and LOIs as those prepared by, commented on, and circulated by Plaintiffs to Defendant READS, Woods, Lions Group, Jo Ann Makous, Natalie Makous, and C&A Logistix. *Id.* at ¶ 39.

Defendant Lions Group ultimately took actual or constructive possession of billions of boxes of Examination Gloves from the seller group, which included the IANUA Defendants, without including or otherwise compensating Plaintiffs. *Id.* at ¶ 41. Plaintiffs allege Defendant Lions Group and the remaining Defendants furthered this and other transactions using Plaintiffs' contacts, connections, and hard work. *Id.* at ¶ 42. According to Plaintiffs, the actual or constructive possession of PPE and the associated benefits to Defendants would not have occurred but for Plaintiffs' contacts, connections, and hard work. *Id.* at ¶ 43.

Based on these allegations, Plaintiffs assert five separate claims for breach of contract against Defendants READS, Woods, Lions Group, Jake Yang, and Jo Ann Makous (Counts I through V); a claim for unjust enrichment against all Defendants (Count VI); a claim for violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statute Section 501.201, *et seq.*, against all Defendants (Count VII); and a claim for civil conspiracy against all Defendants (Count VIII).

On February 24, 2021, the Clerk of Court entered default against Defendants Woods and READS. [ECF No. 19]. On September 30, 2021, the Court dismissed Defendants Lions Group, Jake Yang, Jo Ann Makous, C&A Logistix, LLC, and Natalie Makous and directed the parties to arbitrate the dispute pursuant to a binding arbitration provision in the

agreements among these parties. *See* ECF No. 48. Therefore, at this point, this action remains pending against only the IANUA Defendants.

The IANUA Defendants now seek dismissal of the FAC for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). [ECF No. 30].

## II.   APPLICABLE LEGAL STANDARDS

Motions to dismiss for lack of personal jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(2). "A court must dismiss an action against a defendant over which it has no personal jurisdiction." *S.O.S. Res. Servs., Inc. v. Bowers*, No. 14-22789-Civ, 2015 WL 2415332, at *2 (S.D. Fla. May 21, 2015) (Cooke, J.) (quoting *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323–24 (M.D. Fla. 2011)).

To survive a motion to dismiss, a plaintiff must plead sufficient facts to establish a *prima facie* case of jurisdiction over a nonresident defendant. *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 625 (11th Cir. 2010). In other words, "[t]he plaintiff bears the initial burden of alleging sufficient jurisdictional facts to make a *prima facie* case; if the defendant rebuts with contrary affidavit evidence, the plaintiff reassumes the burden." *Id.* (citing *United Techs. Corp v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). The plaintiff establishes a *prima facie* case if it "presents enough evidence to withstand a motion for directed verdict." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (citation omitted).

A federal court sitting in diversity undertakes a two-step inquiry to determine whether personal jurisdiction exists. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018). First, the Court determines whether the exercise of jurisdiction comports with the long-arm statute of the forum state (which defines the exercise of personal jurisdiction under state law). Second, the Court determines whether the exercise of jurisdiction violates the Due Process

Clause of the Fourteenth Amendment to the United States Constitution. *See id.*; *see also* Fed. R. Civ. P. 4(k)(1)(A); *Mazer*, 556 F.3d at 1274. The reach of the Florida long-arm statute is a question of Florida law; therefore, federal courts construe the long-arm statute as they believe the Florida Supreme Court would. *Id.* (citation omitted). In the absence of authority from the Florida Supreme Court, federal courts look to the Florida district courts of appeal. *Id.* at 1274–75 (citation omitted).

At this stage, the Court accepts the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *See Consol. Dev. Corp.*, 216 F.3d at 1291. If the defendant refutes personal jurisdiction by sustaining its burden of challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate its jurisdictional allegations through affidavits, testimony, or other evidence of its own. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). The Court construes all reasonable inferences in the light most favorable to the plaintiff when dealing with conflicting evidence. *See PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010) ("If such inferences are sufficient to defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists."); *see also Consol. Dev. Corp.*, 216 F.3d at 1291.

## III.   DISCUSSION

With the foregoing in mind, the undersigned considers whether Plaintiffs have demonstrated that the IANUA Defendants are subject to personal jurisdiction.

The IANUA Defendants, who claim to be residents of London, England of the United Kingdom, seek dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(2) on the grounds of lack of personal jurisdiction. *See* Motion at ¶ 1. The IANUA Defendants

argue the allegations in the FAC are insufficient to support the Court's exercise of specific or general jurisdiction. *Id.* at 3. In support of dismissal, the IANUA Defendants submitted the Declaration and Supplemental Declaration of Defendant Cox. [ECF Nos. 30-1 and 44-1].

### A. *Personal Jurisdiction*

The Eleventh Circuit has explained that a nonresident defendant may be subject to personal jurisdiction under Florida's long-arm statute in one of two ways:

> First, a defendant is subject to '*specific* personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida'—for conduct specifically enumerated in the statute. Second, a defendant is subject to '*general* personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in 'substantial and not isolated activity' in Florida.'

*Waite*, 901 F.3d at 1312 (citing *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015)); *see also* Fla. Stat. § 48.193(1)(a) and (2).

If the nonresident defendant is found to be subject to specific or general jurisdiction under Section 48.193(1)(a) or (2), the Court next determines whether the exercise of personal jurisdiction comports with due process. *Id.* The benchmark of this analysis is whether the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). The minimum contacts inquiry focuses on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)). This inquiry ensures that a defendant is haled into court in a forum state based on the defendant's own affiliation with the state, rather than the "random, fortuitous, or attenuated" contacts it makes by interacting with other persons affiliated with the state. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

**B.** *The Court Lacks General Jurisdiction Under Florida's Long-Arm Statute*

Under Florida's long-arm statute, a court has jurisdiction over a "defendant who is engaged in substantial and not isolated activity within this state . . . whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). Such activity can be "wholly interstate, intrastate, or otherwise." *Id.* Florida courts have defined the term "substantial and not isolated activity" as used in Section 48.193(2) to mean "continuous and systematic general business contact" with Florida. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (citing *Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th DCA 1999); *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 415–16 (1984)). Generally, the contacts required to establish general jurisdiction are quite rigorous and "must be especially pervasive and substantial" to satisfy Section 48.193(2). *In re Farmland Indus., Inc.*, No. 3:05–CV–587, 2007 WL 7694308, at *3 (M.D. Fla. Mar. 30, 2007).

Therefore, the exercise of general jurisdiction is only proper when the nonresident defendant's contacts with Florida are "so continuous and systematic as to render [the defendant] essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citations omitted). Additionally, "a corporation's continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Id.* at 132 (citations omitted).

In the FAC, Plaintiffs allege there is general jurisdiction over the IANUA Defendants because they have "engaged in substantial and not isolated activity within this state." FAC at ¶¶ 10–11. However, the FAC lacks any allegations regarding how the IANUA Defendants purportedly engaged in continuous and systematic general business contact with the State of

Florida to establish general jurisdiction. Notably, in Response to the Motion to Dismiss, Plaintiffs do not argue that general jurisdiction exists over the IANUA Defendants.

On the other hand, in her sworn Declaration, Defendant Cox states that IANUA is a company chartered under the laws of the United Kingdom, with its principal place of business in London, England. [ECF No. 30-1 ("Cox Declaration") at ¶ 4]. Cox also states that neither of the IANUA Defendants have operated, conducted, engaged in, or carried on any business or business venture within the State of Florida and that the only time she personally traveled to Florida was to attend a seminar in Miami in 2018. *Id.* at ¶ 7. Plaintiffs did not provide affidavits, testimony or documents to rebut these statements. *See Moale v. Tonno Ltd.*, No. 19-25114, 2020 WL 13389755, at *2 (S.D. Fla. Nov. 30, 2020) (Cooke, J.) (citing *Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009)). Thus, the undersigned finds the FAC fails to allege sufficient facts to demonstrate the IANUA Defendants' contacts with Florida are so pervasive and substantial as to render them essentially at home in Florida, and thus, amenable to suit in this action, and Plaintiffs failed to rebut the IANUA Defendants' evidence to the contrary. *See Bowers*, 2015 WL 2415332, at *3.

Accordingly, the undersigned finds that Plaintiffs have failed to demonstrate that this Court may exercise personal jurisdiction over the IANUA Defendants under the general jurisdiction provision of Florida's long-arm statute, Section 48.193(2).

## C. *The Court Lacks Specific Jurisdiction Under Florida's Long-Arm Statute*

The undersigned next considers whether Plaintiffs have established that the IANUA Defendants are subject to specific jurisdiction.

Section 48.193(1)(a) of Florida's long-arm statute permits personal jurisdiction over a nonresident defendant for any cause of action arising from any one of nine enumerated acts.

Fla. Stat. § 48.193(1)(a); *see also Hinkle v. Cirrus Design Corp.*, 775 F. App'x 545, 548 (11th Cir. 2019) (noting, under the specific jurisdiction provision of the Florida long-arm statute, a defendant is subject to jurisdiction for causes of action arising out of one or more of nine enumerated Florida-connected acts).

Plaintiffs argue the IANUA Defendants are subject to specific jurisdiction because they: (1) carried on a business venture in Florida; (2) committed a tortious act in Florida; and (3) acted as co-conspirators along with the other named defendants who directed acts to the State of Florida. *See* Response at 5–14 (citing Fla. Stat. § 48.193(1)(a)(1)–(2)).

### i.   *Carrying On A Business Venture In Florida*

"In order to establish that a defendant is 'carrying on [a] business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (quoting *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000)). Relevant factors to consider include: (1) the presence and operation of an office in Florida; (2) the possession and maintenance of a license to do business in Florida; (3) the number of Florida clients served; and (4) the percentage of overall revenue obtained from those clients. *Id.* (citations omitted). "For this provision to apply, there must be a direct affiliation, nexus, or substantial connection between the basis for the cause of action and the business activity." *Valencia v. Horizon Att'ys & Couns. at Law PLC*, No. 17-cv-61205, 2017 WL 7792619, at *3 (S.D. Fla. Dec. 8, 2017) (Dimitrouleas, J.) (citing *Citicorp Ins. Brokers (Marine), Ltd. v. Charman*, 635 So. 2d 79, 82 (Fla. 1st DCA 1994)).

The FAC does not provide any factual allegations showing the IANUA Defendants had a general course of business activity in Florida for pecuniary benefit. Thus, Plaintiffs did not satisfy their initial burden. On the other hand, the Cox Declaration, submitted in support of the Motion, indicates the IANUA Defendants do not conduct business in Florida and were in London and were never in Florida when the activities occurred. Plaintiffs aver in their Response to the Motion that the IANUA Defendants (1) were part of the seller group that received the LOAs and LOIs addressed to Plaintiff Ocomo, a Florida resident; (2) proceeded to consummate a transaction to obtain actual or constructive possession of PPE based on these LOAs and LOIs, which would take place in Florida; and (3) knew and understood that the subject transaction was to be consummated and take place in the State of Florida due to Plaintiffs' presence in Miami, Florida. Response at 5. These allegations do not specify any actions taken by the IANUA Defendants in this state for pecuniary benefit and are insufficient to rebut the Cox Declaration demonstrating that the IANUA Defendants did not carry on a business venture in Florida. The undersigned finds Plaintiffs' allegations are insufficient to establish a *prima facie* case of specific jurisdiction based on the carrying on of a business venture in Florida. *See Horizon*, 421 F.3d at 1167 (finding no jurisdiction where the defendant did not have any operations in Florida, served only six clients, and revenues from those clients were less than five percent of gross revenue).

Plaintiffs also argue in the Response that the IANUA Defendants "directly communicated with Plaintiffs to further this transaction" and that "these communications were directed to the State of Florida, intended to conduct and further business transactions in the State of Florida, and constituted solicitation of service activities within the State of Florida." Response at 5–6. The Eleventh Circuit has specified that "communications with

Florida entities from outside the state is not enough to constitute 'carrying on a business' in Florida." *Horizon*, 421 F.3d at 1167 ("While [the defendant] made telephonic and electronic communications from its California offices into Florida, these communications cannot constitute 'conducting business' in Florida."). The undersigned finds that the alleged communications are insufficient to demonstrate the IANUA Defendants were conducting business in Florida. Thus, Plaintiffs also have not demonstrated that the IANUA Defendants engaged in business activity in Florida for pecuniary benefit based on the alleged communications directed to the state.

Accordingly, Plaintiffs have not established that specific jurisdiction is appropriate pursuant to Section 48.193(1)(a)(1).

### ii.   *Committing A Tortious Act In Florida*

The undersigned next considers whether the Court may exercise specific jurisdiction over the IANUA Defendants based on their having committed a tortious act in the state. Fla. Stat. § 48.193(1)(a)(2). "[T]o commit a tortious act in Florida, a defendant's physical presence is not required." *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). However, personal jurisdiction cannot be established under this prong unless a plaintiff shows the defendant's activities in Florida were "essential to the success of the tort." *Valencia*, 2017 WL 7792619, at *4 (quoting *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 394 (11th Cir. 1988)). Moreover, "telephonic, electronic, or written communications into Florida provide a basis for jurisdiction if the tort arises from the communications and depend[s] upon proof of either the existence or the content of any of the communications." *Brennan v. Roman Cath. Diocese of Syracuse N.Y., Inc.*, 322 F. App'x 852, 854–55 (11th Cir. 2009) (quoting *Horizon*, 421 F.3d at 1168) (internal quotations omitted).

13

In the FAC, Plaintiffs allege the IANUA Defendants "committed multiple intentional tortious acts within Florida . . ." FAC at ¶¶ 10–11. As set forth above, in the Motion and supporting Declaration of Defendant Cox, the IANUA Defendants state they have not directed any communications or acts to the State of Florida which would subject them to jurisdiction in this Court. *See* Motion at 5; Reply at 4–5.

In Response, Plaintiffs argue that the IANUA Defendants committed "a tortious act within this state" when they "interfered with Plaintiffs' business relationships" and "closed a deal for billions of boxes of PPE without Plaintiffs' involvement or compensation." Response at 10. Specifically, Plaintiffs allege the IANUA Defendants "committed numerous torts which caused injury to Plaintiffs in Florida," including: (1) disclosing Plaintiffs' proprietary contacts and connections without Plaintiffs' knowledge and consent; (2) representing to third parties that the IANUA Defendants – rather than Plaintiffs – were the contact for the buyer; (3) misappropriating Plaintiffs' contacts, connections and work; (4) intentionally circumventing Plaintiffs and derailing, misdirecting or sabotaging transactions to which Plaintiffs were a party; and (5) exploring business opportunities and consummating transactions for the purchase and sale of PPE based in whole or in part on Plaintiffs' contacts, connections, and work. *Id.* at 6.

Plaintiffs submitted the Sworn Declaration of Plaintiff Ocomo in support of their argument that there is specific jurisdiction under the "committing a tortious act" prong of Florida's long-arm statute. [ECF No. 32-1 ("Ocomo Declaration")]. According to the Ocomo Declaration, the IANUA Defendants were part of a seller group that received the LOAs and LOIs provided by the other named defendants. *Id.* at ¶ 11. Specifically, Plaintiff Ocomo states that on October 7, 2020, the LOAs and LOIs with Ocomo's name on them were sent to the

IANUA Defendants by email. *Id.* at ¶ 12. Notably, Ocomo does not state that the IANUA Defendants were in the United States when they received those communications. That same day, Defendant Cox signed a Non-Disclosure and Non-Circumvention Agreement ("NCNDA") with Defendants READS and Woods in connection with the same transaction for the purchase and sale of PPE. *Id.* at ¶ 13. The undersigned notes that neither READS nor Woods are alleged to have been in Florida at the time.

In his declaration, Plaintiff Ocomo outlines a series of emails, in which the IANUA Defendants were either the recipient or copied, regarding the alleged transaction involving billions of boxes of PPE. *Id.* at ¶¶ 14–17. Copies of the referenced email threads and NCNDA are attached to the Ocomo Declaration. A review of those communications reflects that the IANUA Defendants did not initiate any communications to Ocomo or the State of Florida but, instead, that they received or were copied on communications. Indeed, they were not copied on all communications as Cox was removed from some email chains. *See* Ocomo Declaration at ¶ 20.

Ocomo also states he "participated in a conference call" on October 9, 2020 with the IANUA Defendants and other individuals "concerning this transaction." *Id.* at ¶ 18. He does not indicate that the IANUA Defendants initiated the call or if the substance of their participation was relevant to proof of the underlying torts. *See Brennan*, 322 F. App'x at 854–55. Ocomo claims that, shortly thereafter, the IANUA Defendants and the other named defendants ceased all communication with him regarding closing the alleged transaction. *Id.* at ¶ 22.

Although a defendant may be subject to specific jurisdiction through its "telephonic, electronic, or written communications into Florida provided that the cause of action arose

from those communications," the act of "simply communicating or transferring documents to or within Florida with respect to transactions in another state does not per se impose jurisdiction." *Valencia*, 2017 WL 7792619, at *4 (citing *Harris v. Shuttleworth & Ingersoll, P.C.*, 831 So. 2d 706, 708 (Fla. 4th DCA 2002) (internal quotations omitted)). Here, the allegations do not demonstrate that the IANUA Defendants did anything more than simply participate in some communications and a phone conference. Without evidence that the content of the IANUA Defendants' part in those communications is necessary for proof of the alleged tortious conduct, such participation is insufficient to establish personal jurisdiction.

Plaintiffs' allegations and arguments regarding the IANUA Defendants' alleged tortious acts falls short. The pleadings and declarations reflect that all of the alleged tortious conduct by the IANUA Defendants occurred in the United Kingdom—not Florida. That is, there is no allegation or evidence that the IANUA Defendants engaged in any conduct in Florida. Also, Plaintiffs' allegations that the IANUA Defendants committed a tortious act that caused injury to a Florida plaintiff is similarly insufficient to establish specific jurisdiction. As this Court pointed out in *Moale*, *supra*, the general rule is "that the existence of any injury within Florida, standing alone, is insufficient to support jurisdiction over an out-of-state tortfeasor." 2020 WL 13389755, at *3 (quoting *Kountze v. Kountze*, 996 So. 2d 246, 252 (Fla. 2d DCA 2008)); *see also Homeway Furniture Co. of Mount Airy, Inc. v. Horne*, 822 So. 2d 533, 539 (Fla. 2d DCA 2002) ("[T]he existence of an injury in Florida, standing alone, is insufficient to establish jurisdiction pursuant to section 48.193(1)[(a)(2)] when all of the defendant's tortious conduct occurred outside the state.").

In short, Plaintiffs' allegations that the IANUA Defendants were copied on or received limited communications from Plaintiffs, who are located in Florida, and that Plaintiffs

ultimately suffered alleged injuries in Florida are insufficient to carry Plaintiffs' burden of demonstrating that the IANUA Defendants should be subject to personal jurisdiction based on committing a tortious act in Florida. Therefore, Plaintiffs have failed to establish that the IANUA Defendants are subject to specific jurisdiction pursuant to Section 48.193(1)(a)(2) of Florida's long-arm statute.

### iii.  *Conspiracy-Imputed Jurisdiction*

Plaintiffs also argue the IANUA Defendants may be subject to personal jurisdiction as co-conspirators in acts committed in Florida. When a plaintiff alleges a civil conspiracy, Florida courts have held that "the state's long-arm statute can support personal jurisdiction over any alleged conspirator where any other co-conspirator commits an act in Florida in furtherance of the conspiracy, even if the defendant over whom personal jurisdiction is sought individually committed no act, or had no relevant contact with, Florida." *Diversified Mgmt. Sols., Inc. v. Control Sys. Research, Inc.*, No. 15-81062-CIV, 2016 WL 4256916, at *14 (S.D. Fla. May 16, 2016) (Middlebrooks, J.) (quoting *Mazer*, 556 F.3d at 1281–82). "'Conspiracy-imputed personal jurisdiction' requires that the formation of the conspiracy or the underlying tort upon which the civil conspiracy is predicated occur in Florida." *Id.*

As noted above, neither the allegations in the FAC nor Plaintiffs' Response and supporting declaration demonstrate that the underlying tort occurred in Florida, and there is no allegation or evidence that any of the alleged co-conspirators, much less the IANUA Defendants, engaged in the acts underlying the formation of the conspiracy in Florida. Given that Plaintiffs have not provided any factual allegations to show the IANUA Defendants committed a tortious act in this state, and that the underlying tort is not alleged to have occurred in Florida, there is no basis for "conspiracy-imputed" personal jurisdiction over the

IANUA Defendants under Florida's long-arm statute. *See United Technologies*, 556 F.3d at 1283; *Mazer*, 556 F.3d at 1283 (holding if the complaint does not allege viable facts from which it could be reasonably inferred that the defendant "was part of a conspiracy either engineered in Florida or pursuant to which a tortious act in furtherance was committed in Florida," then the defendant is "not subject to conspiracy-imputed personal jurisdiction under Florida's long-arm statute"); *see also Arch Aluminum & Glass Co. v. Haney*, 964 So. 2d 228, 234–35 (Fla. 4th DCA 2007) (finding no personal jurisdiction where neither the conspiracy nor underlying tort occurred in Florida).

### D. *Due Process*

Because the undersigned concludes that Florida's long-arm statute provides no basis for the exercise of jurisdiction over the IANUA Defendants in this action, the Court need not address the second inquiry, *i.e.*, whether the exercise of jurisdiction comports with due process. *See Moale*, 2020 WL 13389755, at *3 ("Having concluded that Florida's long-arm statute provides no basis for exercising jurisdiction over [the defendant], the Court need not address the second inquiry: whether the exercise of jurisdiction comports with due process."). Additionally, a finding that jurisdiction is not available under Florida's long-arm statute, "compels the conclusion that jurisdiction is not appropriate under the Due Process clause." *Valencia*, 2017 WL 7792619, at *5.

In any event, there is an absence of allegations sufficient to rebut Defendant Cox's statements in her Declaration that neither she nor IANUA has any contacts with this state. One personal visit to Florida in 2018 and attenuated communications with Plaintiffs are insufficient to satisfy the due process concerns.

Accordingly, for the reasons discussed above, the undersigned finds that Plaintiffs have not established that the IANUA Defendants are subject to personal jurisdiction in this Court.

### E.  *Plaintiffs' Motion for Leave to Supplement Response*

On November 10, 2021, Plaintiffs filed a Motion for Leave to Supplement their Response to the IANUA Defendants' Motion to Dismiss. [ECF No. 54]. In that Motion, Plaintiffs argue that since filing the Motion to Dismiss, the IANUA Defendants have "actively and extensively participated in this litigation on the merits – over the seven months since the motion was filed." *Id.* According to Plaintiffs' Supplemental Response, the IANUA Defendants have waived their challenge to personal jurisdiction by actively participating in the merits of this case, including: (1) participating in a case management conference; (2) submitting a joint scheduling report; (3) negotiating and submitting a proposed confidentiality order; (4) serving discovery requests; and (5) seeking relief from the Court on the parties' discovery disputes. [ECF No. 54-1, at 4]. The undersigned disagrees.

A review of the Court's docket in this action—which only contains seventy-three entries since the case was filed over nineteen months ago—shows the IANUA Defendants have not waived their challenge to personal jurisdiction based on their litigation activity. Rather, they have limited their participation in this action to comply with the Court's orders and pre-trial deadlines while actively pursuing their Rule 12(b)(2) defense. *See, e.g.*, *Dawson v. Bruce Teleky, Inc.*, No. 18-cv-1908, 2019 WL 13066868, at *3 (M.D. Fla. Nov. 19, 2019) (finding defendants' litigation activity, including participating in some discovery, filing two motions to compel, attending a telephonic hearing, and participating in a case management conference, "falls short of the substantial participation necessary to waive personal jurisdiction").

Therefore, the undersigned finds that even if the Court considers Plaintiffs' Supplemental Response, the IANUA Defendants have not waived their challenge to personal jurisdiction, and the Motion to Dismiss should still be granted.

**IV.   RECOMMENDATION**

Based on the foregoing, the undersigned respectfully recommends that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 30] be **GRANTED** and that Counts VI, VII, and VIII against Defendants IANUA Market, Ltd. and Leah Cox be **DISMISSED** on the grounds these Defendants are not subject to personal jurisdiction in this Court. The undersigned also recommends that Plaintiff's Motion for Leave to Supplement Response to Defendants' Motion to Dismiss [ECF No. 54] be **DENIED**.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Marcia G. Cooke, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 26th day of July 2022.

MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

cc:   The Honorable Marcia G. Cooke
      Counsel of Record

20