**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-cv-25081-COOKE/DAMIAN

CANOBINOTI, LLC and DAVID OCOMO,

    Plaintiffs,

vs.

RICHARD WOODS, REAL ESTATE
ACQUISITION DEVELOPMENT SALES,
LLC d/b/a READS-HEALTHCARE, LLC,
THE LIONS GROUP, LLC, JAKE YANG,
JO ANN MAKOUS, C&A LOGISTIX, LLC,
NATALIE MAKOUS, LEAH COX, and
IANUA MARKET LTD.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON**
**PLAINTIFFS' EXPEDITED MOTION TO REQUEST**
**APPOINTMENT OF ARBITRATOR OR, IN THE ALTERNATIVE,**
**TO RECONSIDER ORDER COMPELLING ARBITRATION [ECF NO. 49]**

THIS CAUSE is before the Court on Plaintiffs, Canobinoti, LLC ("Canobinoti") and David Ocomo's ("Ocomo") (collectively "Plaintiffs"), Expedited Motion to Request Appointment of Arbitrator or, in the alternative, to Reconsider Order Compelling Arbitration (the "Motion"), filed October 28, 2021. [ECF No. 49]. The Motion was referred to the undersigned by the Honorable Marcia G. Cooke, United States District Judge, for a Report and Recommendation. [ECF No. 73]. *See* 28 U.S.C. § 636(b)(1)(B).

The undersigned has reviewed the parties' memoranda [ECF Nos. 55 and 57], the pertinent portions of the record, and all relevant authorities and is otherwise fully advised in the premises. For the reasons that follow, it is recommended that Plaintiffs' Expedited Motion

to Request Appointment of Arbitrator, or in the alternative, to Reconsider Order Compelling Arbitration [ECF No. 49] be granted.

## I. BACKGROUND

The factual background of this case and Plaintiffs' claims were previously set forth in the Court's September 30, 2021 Order granting Defendants' The Lions Group, LLC, Jake Yang, Jo Ann Makous, C&A Logistix, LLC, and Natalie Makous (collectively, the "Lions Group Defendants") Motion to Dismiss for Lack of Jurisdiction. [ECF No. 48 ("Sept. 30, 2021 Order")].

As noted in the Court's September 30, 2021 Order, the Lions Group Defendants argued that this action is governed by a binding arbitration agreement, based on an arbitration provision in the Irrevocable Master Fee Protection Agreement (the "Agreement"), dated October 3, 2020. The relevant provision of the Agreement, titled "Arbitration," states:

> All parties agree to refer any disputes between the parties arising out of or in connection with this agreement including any questions regarding its existence, validity or termination to arbitration rules of the international arbitration centre (I.A.C). The appointed arbitrator shall hold the proceedings in any country chosen by the beneficiary parties and the rules of the IAC shall apply.

[ECF No. 49-1 ("Agreement"), at 4].

In the September 30, 2021 Order, the Court granted the Lions Group Defendants' Motion to Dismiss and directed the parties to arbitrate this matter pursuant to the terms of the arbitration provision. *See* Sept. 30, 2021 Order, at 11. In so ruling, the Court found that "all of Plaintiffs' claims fall within the arbitration provision" because the "purported breaches all involve the same transaction or deal" for the alleged purchase and sale of PPE. *Id.* at 10. The Court ordered the parties to file a joint status report every 180 days advising as to the status of the arbitration proceeding and closed the case for administrative purposes "without

prejudice to the parties moving to re-open the case once the arbitration has been completed." *Id.* at 11.

On March 29, 2022, pursuant to the Court's September 30, 2021 Order, the parties filed separate status reports advising on the status of the arbitration proceeding. Plaintiffs' Status Report advised that "the arbitration proceeding has not commenced" and that the Lions Group Defendants "will not agree to participate in arbitration." [ECF No. 71]. On the other hand, the Lions Group Defendants' Status Report stated they are no longer subject to the Court's jurisdiction since the Court's September 30, 2021 Order dismissed the claims against them for lack of subject matter jurisdiction. The Lions Group Defendants advised that although they do not believe they are subject to this Court's jurisdiction, they filed a Status Report in an effort "to cooperate" with the Court and advised that Plaintiffs "continue to attempt to invoke the subject matter jurisdiction" of the Court by filing the Expedited Motion to Request Appointment of Arbitrator. [ECF No. 72]. However, the Lions Group Defendants' Status Report neither addresses the status of the arbitration proceeding nor Plaintiffs' assertion that the Lions Group Defendants will not agree to participate in arbitration.

## II.     PLAINTIFFS' REQUEST FOR APPOINTMENT OF AN ARBITRATOR

In the Motion, Plaintiffs aver that the arbitration provision in the Agreement fails to designate an arbitral body that is capable of appointing arbitrators and which has its own arbitration rules. *Id.* at 2–3. Specifically, Plaintiffs assert the International Arbitration Centre ("IAC")—the chosen arbitral forum in the Agreement—is simply an arbitration facility, or a space for rent, that has neither arbitration rules nor the ability or authority to appoint an arbitrator. *Id.* at 3. Consequently, Plaintiffs seek an order from the Court appointing an arbitrator pursuant to Section 5 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 5, to

preside over the arbitration proceeding under the terms of the Agreement, or, in the alternative, to reconsider the Court's September 30, 2021 Order compelling arbitration, pursuant to Federal Rules of Civil Procedure 59 and 60, and allow Plaintiffs to proceed on their claims against the Lions Group Defendants before this Court. *See* Motion at 10.

In response, the Lions Group Defendants argue Plaintiffs have failed to meet the requirements for reconsideration of the Court's September 30, 2021 Order. [ECF No. 55 ("Response") at 2]. They also argue that the Agreement is governed by English law and the New York Arbitration Convention, not the FAA, and that the place for arbitration is the IAC in London. *Id.* at 4.

### III. APPLICABLE LEGAL STANDARDS

The Court previously discussed the strong presumption in favor of enforcement of valid arbitration provisions. *See* Sept. 30, 2021 Order at 5 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630–31 (1985) (emphasizing that enforcement of a mutually agreed upon arbitration or forum-selection clause serves as an "indispensable precondition to the achievement of the orderliness and predictability essential to any international business transaction")). To that end, the FAA requires courts to "rigorously enforce agreements to arbitrate." *Mitsubishi*, 473 U.S. at 625–26 (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

The FAA provides that when "a recalcitrant party refuses to proceed with an arbitration agreement, District Courts 'shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.'" *Inetianbor v. CashCall, Inc.*, 768

F.3d 1346, 1349 (11th Cir. 2014) (emphasis omitted) (quoting 9 U.S.C. § 4). Moreover, Section 5 of the FAA, entitled "Appointment of arbitrators or umpire," states:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5.

The Eleventh Circuit has specified the requisite analysis for determining whether a substitute arbitrator may be appointed pursuant to Section 5 of the FAA and the parties' contractual agreement:

> Where the chosen forum is unavailable . . . or has failed for some reason, § 5 applies and a substitute arbitrator may be named. *Astra Footwear Indus. v. Harwyn Int'l, Inc.*, 442 F. Supp. 907, 910 (S.D.N.Y.), aff'd, 578 F.2d 1366 (2d Cir. 1978). Only if the choice of forum is an integral part of the agreement to arbitrate, rather than an "ancillary logistical concern" will the failure of the chosen forum preclude arbitration. *See Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F. Supp. 1359, 1364 (N.D. Ill. 1990) (citing *Nat'l Iranian Oil Co. v. Ashland Oil*, 817 F.2d 326 (5th Cir. 1987)).

*Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000). "To determine whether the forum selection clause is integral, [courts] must consider how important the term was to one or both of the parties at the time they entered into the agreement." *Flagg v. First Premier Bank*, 644 F. App'x 893, 896 (11th Cir. 2016) (quoting *Inetianbor*, 768 F.3d at 1350). This determination is made by examining the text of the arbitration provision. *Id.* If the Court determines that the choice of arbitral forum is not integral to the parties' agreement, the court may then appoint a substitute arbitrator pursuant to Section 5 of the FAA.

## IV. DISCUSSION

### A. *Appointment Of A Substitute Arbitrator*

Plaintiffs ask the Court to appoint an arbitrator to preside over the arbitration proceedings pursuant to the parties' Agreement and Section 5 of the FAA because the chosen forum is unavailable. Plaintiffs argue the parties' choice of arbitral forum was not integral to the Agreement, and, additionally, that the choice of forum is severable from the rest of the Agreement. Motion at 5–9. The Lions Group Defendants do not refute Plaintiffs' assertion that the IAC is an unavailable forum for the parties to arbitrate their dispute. Rather, they argue the Agreement requires the arbitration proceeding be governed by English law and conducted "through a London venue at the IAC." Response at 2.

The undersigned first addresses the issue of what law governs the interpretation and enforceability of the arbitration provision in the Agreement and then turns to the issue of whether a substitute arbitrator may be appointed pursuant to Section 5 of the FAA.

#### 1. Governing Law

The interpretation of an arbitration clause is a matter of federal law. *Olsher Metals Corp. v. Olsher*, No. 01-3212-CIV, 2003 WL 25600635, at *4 (S.D. Fla. Mar. 25, 2003) (Jordan, J.), *aff'd*, No. 03-12184, 2004 WL 5394012 (11th Cir. Jan. 26, 2004) (per curiam) (unpublished opinion). In *Olsher*, Judge Jordan found that federal law controls not only determinations regarding the validity and enforceability of an arbitration clause, but also the interpretation and scope of the clause, notwithstanding an Italian choice-of-law provision in the agreement. *Id.* at *3–5. Judge Jordan also held that the "choice-of-law clause applies only to substantive rights and duties of the parties during the arbitration." *Id.* at *5.

Like the agreement in *Olsher*, the Agreement here contains choice-of-law and arbitration provisions that reference foreign law. Specifically, the parties' Agreement contains the following relevant provisions:

> **GOVERNING LAW AND JURISDICTION**:
> This document shall be governed and construed in accordance with current English or I.C.C 400/500/600 signed between partners NCNDA laws.
>
> **ARBITRATION**:
> All parties agree to refer any disputes between the parties arising out of or in connection with this agreement including any questions regarding its existence, validity or termination to arbitration rules of the international arbitration centre (I.A.C). The appointed arbitrator shall hold the proceedings in any country chosen by the beneficiary parties and the rules of the IAC shall apply.

[Agreement at 4].

The Lions Group Defendants argue that English law applies to the Agreement and to the Court's interpretation of the arbitration clause. Response at 4–6. However, consistent with *Olsher*, in the September 30, 2021 Order, the Court already ruled on the threshold issue of arbitrability and found that Plaintiffs' claims were subject to arbitration pursuant to the terms of the Agreement and the FAA. *See* Sept. 30, 2021 Order at 5–10. Therefore, the Lions Group Defendants' contention that the FAA is inapplicable to the determination of the enforceability of the arbitration clause (because of the English choice-of-law provision) has already been rejected in this case and is otherwise legally untenable. *See Regent Seven Seas Cruises, Inc. v. Rolls Royce, PLC*, No. 06-22347-CIV, 2007 WL 601992, at *6 (S.D. Fla. Feb. 21, 2007) (Huck, J.) ("This Court has recognized that even where the underlying agreement has a choice-of-law provision, federal law still governs the threshold question of arbitrability." (citing *Olsher*, slip. op. at 7)); *Sea Bowld Marine Grp., LDC v. Oceanfast Pty, Ltd.*, 432 F. Supp. 2d 1305, 1312 (S.D. Fla. 2006) (Gold, J.) ("While [choice-of-law and arbitration provisions] are relevant to

the substantive law to be used, and the location of arbitration, they say nothing, and mean nothing, as to the threshold issue of arbitrability.").

Accordingly, whereas current English law may be the applicable substantive law to be applied during the arbitration pursuant to the choice of law provision of the Agreement, all questions relating to the scope, interpretation, construction, and, relevant here, enforceability of the arbitration clause in the Agreement in this case are governed by federal law.

### 2. Whether The Parties' Choice of Arbitral Forum Is Integral To The Agreement

Plaintiffs contend that the arbitral forum designated in the Agreement is unavailable. As noted by the Eleventh Circuit, the failure of the parties' chosen forum "does not destroy the arbitration clause." *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000). "Only if the choice of forum is an integral part of the agreement to arbitrate, rather than an ancillary logistical concern will the failure of the chosen forum preclude arbitration." *Id.* (citation omitted).

Therefore, the undersigned first considers the text of the arbitration provision to determine whether the choice of arbitral forum is integral to the parties' Agreement.

The parties' twelve-page Agreement appears to be a standard form agreement provided by the International Chamber of Commerce. *See* Agreement. As noted above, the parties' Agreement contains an arbitration clause in which the parties agree to refer "any disputes between the parties arising out of or in connection with this agreement including any questions regarding its existence, validity or termination to arbitration rules of the international arbitration centre (I.A.C.)." *Id.* at 4. The arbitration clause also states the "appointed arbitrator shall hold the proceedings in any country chosen by the beneficiary

parties and the rules of the IAC shall apply." *Id.* Aside from this arbitration clause, the parties' Agreement contains no reference to the IAC anywhere else in the Agreement.

Plaintiffs contend that the chosen arbitral forum in the parties' Agreement, the IAC, is not an arbitral body capable of appointing an arbitrator and conducting an arbitration proceeding under its own rules. Motion at 5. Plaintiffs also assert that the choice of arbitral forum was not integral to the parties' Agreement as evidenced by the lack of reference to the IAC anywhere else in the Agreement. *Id.* And, Plaintiffs argue that the arbitration provision in the Agreement includes permissive language that references the arbitration rules of the IAC but does not conclusively state that arbitration must proceed before the IAC. *Id.* Aside from asserting that the parties' Agreement is governed by English law, the Lions Group Defendants do not address any of Plaintiffs' arguments regarding whether the choice of arbitral forum is integral to the Agreement and whether appointment of an arbitrator pursuant to Section 5 of the FAA may be appropriate. As set forth above, the undersigned finds that federal law, not English law, governs for the purposes of determining the enforceability of the arbitration provision by the Court. *See* ECF No. 55.

Based on a review of the text of the parties' Agreement, the undersigned finds that the choice of arbitral forum is not integral to the Agreement because it does not pervade the Agreement. *De Pombo v. IRINOX N. America, Inc.*, No. 20-cv-20533, 2020 WL 6290153, at *3–4 (S.D. Fla. Oct. 7, 2020) (Bloom, J.) (finding the omission of any further reference to the AAA suggest that the parties did not intend for their choice of arbitral forum to be integral to their agreement). Apart from the arbitration clause, the Agreement contains no other reference to the IAC in any other provision. The omission of any further reference to the IAC suggests that the parties did not intend for their choice of arbitral forum to be integral to their

9

agreement but rather that the selection of the IAC was merely an ancillary logistical concern. Therefore, the unavailability of the chosen forum does not preclude arbitration, but instead, the Agreement permits the appointment of a substitute arbitrator by the Court pursuant to Section 5 of the FAA. *Id.*; *see also Brown*, 211 F.3d at 1222.

### 3. Severability Of The Arbitral Forum Provision

Alternatively, the undersigned agrees with Plaintiffs that if the forum selection provision of the arbitration clause in the Agreement is found to be unenforceable due to the unavailability of the parties' chosen arbitral forum, the forum selection provision may be severed without eliminating the parties' agreement to arbitrate. As Plaintiffs point out, the Agreement includes the following severability clause:

> **PARTIAL INVALIDITY**:
> The illegality, invalidity and non-enforceable provision of this document under the laws of any jurisdiction shall not affect its illegality [sic], validity or enforceability under the law of any other jurisdiction or provision.

Agreement at 4.

"Generally, the presence of a severability provision in the parties' agreement evinces the parties' intention to enforce the remainder of the agreement in the event any portion of it is deemed invalid." *Distribuidora de Vehiculos S.A. v. John Deere Constr. & Forestry Co.*, No. 12-cv-20983, 2012 WL 13014702, at *6 (S.D. Fla. June 13, 2012) (Ungaro, J.) (quoting *Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1031 (11th Cir. 2003) (internal quotations omitted). Thus, the text of the Agreement reflects that the parties intended to arbitrate, even though the provision dictating the arbitral forum is unenforceable. The question, then is whether the unenforceable provision is severable. *See De Pombo*, 2020 WL 6290153, at *5 ("If

a provision is not enforceable, then the court must determine whether the unenforceable provisions are severable." (citing *Hudson v. P.I.P. Inc.*, 793 F. App'x 935, 938 (11th Cir. 2019)).

State law controls the determination of whether to sever an offending contractual clause. *Id.*; *see also Terminix Int'l v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1331 (11th Cir. 2005) (stating that state contract law should apply to dispute whether clause should be severed in arbitration agreement). Under Florida law, "a bilateral contract is severable where the illegal portion of the contract does not go to its essence, and where, with the illegal portion eliminated, there still remains of the contract valid legal promises on one side which are wholly supported by valid legal promises on the other." *Hudson v. P.I.P., Inc.*, No. 18-61877-CIV, 2020 WL 5647009, at *3 (S.D. Fla. Mar. 13, 2020) (Strauss, J.) (quoting *Local No. 234 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada v. Henley & Beckwith, Inc.*, 66 So. 2d 818, 821-22 (Fla. 1953)), *report and recommendation adopted*, 2020 WL 5647051 (S.D. Fla. Apr. 2, 2020) (Moreno, J.). The Eleventh Circuit has also clarified that "provisions will be severed only if the performance as to which the agreement is unenforceable is not an *essential part* of the agreed exchange." *Inetianbor*, 768 F.3d at 1352 (quoting Restatement (Second) of Contracts § 184(1)). Thus, an unenforceable provision is severable where that provision does not "pervade the arbitration agreement." *In re Checking Account Overdraft Litig. MDL No. 2036*, 685 F.3d 1269, 1283 (11th Cir. 2012).

As discussed above, the undersigned finds that the choice of arbitral forum in this case is not integral to the parties' Agreement because it does not pervade the Agreement, but rather suggests an ancillary logistical concern. *See De Pombo*, 2020 WL 6290153, at *6; *Hudson*, 2020 WL 5647009, at *4 ("A plain reading of the language of the arbitration clause indicates that its main purpose is to define the forum for resolving disputes pertaining to . . . the

11

Agreements."). Here, the allegedly unenforceable terms referencing arbitration before the IAC, if severed, would not eliminate the existence of the otherwise valid Agreement, namely, an agreement involving the alleged PPE transactions and to refer any disputes surrounding such transactions to arbitration. "[T]he illegal portion of the arbitration clause in the instant litigation does not represent the only, or even the primary, reason for the parties to have agreed to arbitrate disputes." *De Pombo*, 2020 WL 6290153, at *6.

Therefore, the undersigned finds that the provision designating the IAC as the arbitral forum and rules is severable and recommends the Court compel arbitration according to the remaining, valid terms of the Agreement. *See Terminix*, 432 F.3d at 1331.

Accordingly, the undersigned concludes that the appointment of a substitute arbitrator pursuant to Section 5 of the FAA is appropriate.

### B. *Reconsideration*

Because the undersigned finds that the appointment of a substitute arbitrator is warranted under the circumstances of this case, the Court need not address Plaintiffs' alternative argument regarding reconsideration of the Court's September 30, 2021 Order. Nonetheless, the issue of reconsideration was the Lions Group Defendants' primary concern in its Response to Plaintiffs' Motion. *See* Response at 2.

As explained above, the arbitral forum provision is not integral to the Agreement between the parties in this case, and, therefore, reconsideration of the Court's September 30, 2021 Order compelling arbitration is not warranted. However, in the event the Court were to determine that the forum and rules provision designating the IAC is integral to the parties' Agreement, then reconsideration of the Order compelling arbitration would be warranted. *See Flagg*, 644 F. App'x at 897 ("Because the choice of the [National Arbitration Forum] as the

arbitral forum was an integral part of the agreement to arbitrate, we conclude that the district court properly denied First Premier's motion to compel arbitration and appoint a substitute for NAF, and to stay or dismiss the proceedings."); *Beverly Enters. Inc. v. Cyr*, 608 F. App'x 924, 926 (11th Cir. 2015) (vacating district court order compelling arbitration before the NAF as integral to agreement); *Inetianbor*, 768 F.3d at 1353 ("For these reasons, the designation of the Tribe as the arbitral forum is integral to the agreement, so arbitration can only be compelled if that forum is available.").

Again, reconsideration is not warranted here, though, because the Court may appoint a substitute arbitrator.

## V.   RECOMMENDATION

Based on the foregoing, the undersigned respectfully recommends that Plaintiffs' Expedited Motion to Request Appointment of Arbitrator [ECF No. 49] be **GRANTED** and that the Court appoint an arbitrator pursuant to Section 5 of the FAA to arbitrate the issues raised in this case and that the arbitration proceed in the manner otherwise provided for in the parties' Agreement. The undersigned further recommends that the case remain **STAYED** pending the completion of the arbitration proceedings.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Marcia G. Cooke, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of

justice. *See* 28 U.S.C § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 26th day of July 2022.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

cc: The Honorable Marcia G. Cooke
    Counsel of Record